CLETUS BODE, APPELLANT, v. WILLIAM F. PRETTYMAN, APPELLEE.

30 N. W. 2d 627

Filed January 16, 1948.   No. 32333.

*William S. Padley,* for appellant.

*Dent & Plummer,* for appellee.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and LIGHTNER, District Judge.

PAINE, J.

This is an equity action to dissolve a partnership in the business of dirt moving and land leveling, and the partners joined in asking for the appointment of a receiver and for an accounting. The court entered findings, which were generally for defendant, and accepted the final report of a certified public accountant as to the accounting. Plaintiff appealed.

The petition, filed July 18, 1946, alleged that the parties on May 1, 1945, entered into an oral agreement to engage as a partnership in the dirt-moving and land-leveling business, and did purchase a D-7 Caterpillar tractor, a power control unit, and a used trailer, which equipment was to be used with other rented equipment as might be necessary.

The plaintiff was to have the management, supervision, and control of the equipment, and the accounting of the business, and was to receive $1 for each $8.50 of income for this service, and the profits or losses were to be shared equally between the parties, and the property of said joint venture should be owned equally.

The petition alleges that this arrangement continued during the year 1945 until December of that year, when the defendant, without authority, collected $1,725 from one Latschar, which plaintiff claimed belonged to the partnership for equipment rental, and which the defendant refused to pay into the partnership; that up to April 26, 1946, under the terms of said partnership agreement, the receipts of said venture amounted to $22,616.07, and, in addition, there were that day accounts receivable of $2,649.95, which included the $1,725 collected

by defendant; that the expenditures up to that date amounted to $23,433.78; that to keep in operation during said time the plaintiff was required to advance $1,817.71 of his own money to pay on the expenses of the partnership; that payments had been made on the mortgage indebtedness up to April 26, 1946, on which date there was a balance due the North Platte Loan and Finance Company of $2,500. Plaintiff asked that a receiver be appointed and proper accounting made of all business transactions, and that the assets be sold and divided, and for other relief.

The defendant in his answer admitted formation of the partnership by oral agreement, as alleged, but denied the terms and conditions thereof; set forth that defendant had previously been engaged in the land-leveling business, and was the owner of certain heavy-duty equipment; that he agreed to furnish the equipment described in plaintiff's petition, the balance of the indebtedness against the three pieces of equipment to be paid out of partnership earnings; and to become the property of the partnership.

The answer further alleged that plaintiff Bode had secured a contract at Provo, South Dakota, and the defendant agreed to furnish three pieces of equipment, a D-7 Caterpillar tractor, a power control unit, and a used fuel and grease wagon, called also a trailer; that Bode was to devote his full time and energies to the partnership business, and was to receive $1 for each $8.50 earned by the equipment for his personal services, and that after paying Bode and the other operating expenses, the profit was to be divided equally.

The answer alleged that the defendant owned considerable other heavy equipment, consisting of a 75 Caterpillar tractor, Austin-Weston scraper, Allis-Chalmers tractor and power unit, and a LaPlante-Choate scraper; that while this additional equipment was taken to South Dakota and then returned to Nebraska, said equipment never became partnership property; that the

$1,725 referred to in plaintiff's petition represented earnings from the Allis-Chalmers tractor, earned for work done by defendant Prettyman in a private contract with Paul Latschar, and was the absolute property of the defendant, and had nothing to do with the partnership venture; that the equipment above referred to was at all times the separate property of the defendant; that when said equipment was sold all proceeds were turned over to the defendant; that he permitted $650, which was received from the old tilt dozer used with the 75 Caterpillar tractor, to be applied on the lease purchase of additional equipment to be used in the partnership venture; that in order to carry out the operations a scraper and tilt dozer were necessary, and the same were purchased on a "lease purchase" plan from the Fuchs Machinery Company; that said two pieces of equipment are assets of the partnership of great value; that plaintiff refused to properly account for the partnership operations; that all of said property used and utilized in the venture belongs to the partnership.

Defendant joined in the request that a receiver be appointed and that an accounting be had, covering all business transactions of the partnership, and that all equipment of the partnership be sold and the money divided equally, and for further relief.

The reply denied the allegations of new matter as to purchase of additional equipment, and alleged the $1,725 Latschar rental was a partnership asset.

The trial began on September 11, 1946. It was continued from time to time as witnesses were available and to take depositions. At the conclusion of the evidence, the case was taken under advisement and briefs were submitted.

Decree was entered by the court on March 25, 1947, finding generally in favor of defendant and against the plaintiff; that the parties had been associated together under their oral agreement of May 1, 1945, but that the business had been conducted in the name of

.the plaintiff, who had kept all of the books and records; that plaintiff had on hand at the time of the trial $2,361.29 of partnership funds, including cash and accounts receivable; that in addition thereto he had wrongfully taken from said partnership funds $100 to pay his attorney a retainer fee in the case at bar, and also wrongfully taken $445.83 for the purpose of paying his personal obligations to the North Platte Loan & Finance Company, so that the plaintiff should account to the partnership for $2,907.12.

The court further found that the Allis-Chalmers tractor was not partnership property, and that the defendant should not be required to account to the partnership for $1,725; that the parties agreed that three implements, the D-7 Caterpillar tractor, power unit, and grease wagon, are partnership assets, and both parties had asked the court to appoint a receiver to take charge of and sell the same, and the court appointed L. E. Gundersen, of North Platte, as such receiver and fixed his bond at $5,000. He was directed to take possession of all personal records and assets and make a detailed inventory and file same with the court, and to advertise and sell all partnership assets.

The court further found that the partnership was the owner of an A-7 tilt dozer and a carryall scraper, with tools, etc., which implements were purchased with partnership assets from the Fuchs Machinery Company and were at all times partnership property, each partner having an undivided one-half interest therein, and that these items the receiver should hold until further order of the court.

Thereafter, upon the confirmation of the receiver's report of sale, the court approved the sale of the D-7 Caterpillar tractor, power take-off unit, tank wagon, etc., to plaintiff for $7,200.

In a journal entry of June 4, 1947, the court found that, through inadvertence, an error was made in the accounting, and that plaintiff was entitled to a credit of

$802, paid Fuchs Machinery Company on the scraper, and $237, paid on the tilt dozer out of his own funds, which reduced the balance due from plaintiff to the partnership account to $1,868.12 as the correct sum. The court ordered the receiver to sell the balance of all chattel property of the partnership. Thereupon, motion for new trial was overruled, and supersedeas bond was given by plaintiff for $1,000.

The plaintiff's assignments of error are as follows: (1) The trial court erred in not making accounting between the parties under the pleadings and evidence, and the accounting made does not conform to the evidence; (2) the court erred in its finding that the defendant was not indebted to the partnership in the amount of $1,725; (3) the court erred in finding that the tilt dozer Le-Tourneau Model A-7 and the LS carryall scraper were partnership property; (4) the court erred in finding generally for the defendant and against the plaintiff for the reason that said finding is contrary to the evidence; and (5) the court erred in refusing to find that the partnership had an outstanding indebtedness of $500 in favor of North Platte Loan & Finance Company.

The plaintiff alleged error in finding that the item of $1,725 for rental work done by the Allis-Chalmers tractor was not a partnership item. Plaintiff testified that the Allis-Chalmers tractor and power take-off were unprofitable, although he had taken them to Provo, South Dakota, and upon returning to North Platte he did not want to use them in the partnership. The defendant rented the equipment to Latschar and received $1,725 for the use of it. Plaintiff testified that, when they met at defendant's home south of Maxwell one night, defendant agreed to pay the $1,725 into the partnership, but never did. The evidence shows that the plaintiff sold this Allis-Chalmers tractor for the defendant, turned the proceeds of the sale over to defendant, and made no claim to the proceeds.

The Uniform Partnership Act, section 67-308, R. S.

1943, provides in part: "All property originally brought into the partnership stock or subsequently acquired by purchase or otherwise, on account of the partnership, is partnership property."

The evidence disclosed that defendant had been for a long time engaged in the land-leveling business and had a large amount of expensive machinery for such work; that plaintiff took all this machinery to the first job the partnership had in South Dakota to try it out; and that when he finished the job he decided that only three pieces were practical or useful, turned back to defendant several pieces, including the Allis-Chalmers tractor, and never used them again in partnership work. Therefore, the item was temporarily, or tentatively, accepted by plaintiff and taken into the partnership stock, but immediately on return from South Dakota was rejected and turned back as the sole property of defendant.

Defendant testified that after plaintiff came back from South Dakota they reached a new agreement, and all that plaintiff wanted to take was "the D-7 and the grease wagon and the 75-cat and power-control unit and bulldozer, and operate them."

"Q Now, after that equipment came back here from South Dakota, did you make contracts and used it yourself? A When it was brought back it was taken over to the Nebraska Machinery Lot and Paul Latscher had gotten in touch with me and told me or asked me if we had any available equipment for he would like to rent one for the Railroad, and I told him I had this Allis-Chalemrs Tractor, and he said, he would like to use it, which he did. Q And what did he pay you for the use of that tractor? A $1725. Q Did you receive that money? A Yes. Q And have had it at all times, have you? A Yes."

The court held this $1,725 to be the money of the defendant, not the partnership. The fact that the plaintiff later on sold this Allis-Chalmers tractor and turned the entire proceeds thereof over to defendant tends to

confirm the validity of the court's holding in this matter.

This is a question where it is difficult, but necessary and important, to distinguish exactly who owned the Allis-Chalmers tractor when it earned the $1,725.

In 40 Am. Jur., Partnership, § 89, p. 191, it is said: "In a given case, the chief criterion for determining whether certain property is or is not that of the firm is the intent of the partners to devote it to partnership purposes. In the absence of clear intent, the courts have recognized certain facts as indicia of such intent."

In the case at bar, the declaration of plaintiff that he could not use the Allis-Chalmers tractor profitably in partnership business, and his act in turning it back to defendant, we believe, are factors which, under the law and the evidence, support the trial court in its holding in this matter.

The next error assigned for reversal is that the court erred in finding that the tilt dozer and the scraper were partnership property. It appears that Cletus Bode, the plaintiff, purchased these two pieces of machinery in his own name. The LS carryall scraper was purchased on a contract, exhibit 6, dated August 22, 1945, from the Fuchs Machinery & Supply Company, of Omaha. This rental purchase agreement provided that $350 a month should be paid monthly in advance, and an option to purchase was given, at the total price of $4,278 plus 6 percent interest, and if purchased the rental payment would apply on the purchase price, but the option to purchase must be taken up within ten months or the option was to be void.

The Le-Tourneau Model A-7 tilt dozer was purchased on a similar rental purchase agreement, being exhibit A, on December 15, 1945, between the same parties. Payment was to be made at the rate of $100 a month for the first three months and $120 a month for the next five months, and the rental payments to apply on the purchase price of $1,000 and interest. The option to

purchase was to be exercised within eight months or it would be void.

The trial court held that all of the monthly payments on these two implements were made from partnership funds, except the final payments, which were made by the plaintiff from his own funds, to wit, $802 on the scraper and $237 on the tilt dozer. The court further held that these two machines belonged to the partnership, but that the plaintiff was entitled to credit for the two final payments above set out, which he had made out of his own funds. The plaintiff claimed that he purchased these two items in his own name, and that therefore his credit was pledged for the payment of the contract to the Fuchs Machinery Company, and they belonged to him personally.

The plaintiff claimed that from the time he purchased the carryall scraper in August 1945 he rented it out to the partnership for $350 a month, and from the time he purchased the tilt dozer in December 1945 he rented this machine out to the partnership for $120 a month, and that these rental prices were less than he could have received had he rented out these two machines, which belonged to him, to other parties.

On cross-examination the plaintiff admitted that for two months when the scraper was not being used he still charged the partnership $350 rental for it, and justified this charge on the theory that such equipment was hard to acquire, and it was worth the payment of the rental by the partnership to hold it over for another year's work, even when not being used. During one month the scraper was rented to Mr. Hood, who paid $350 for its use, and this $350 was entered by the plaintiff as a partnership income.

Plaintiff testified that he never talked to his partner, Prettyman, about his buying these two pieces of equipment as his own individual property and making no use of them except in the partnership business.

The Uniform Partnership Act, as found in our Ne-

braska law, declares that each partner is accountable as a fiduciary. Section 67-321, R. S. 1943, reads in part as follows: "Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property."

The explanation made by plaintiff of the purchase of these two items, which have become valuable, and which he attempts to own as his own individual property, would, if accepted, resolve all doubts in plaintiff's favor, except for the fact that he failed to disclose to his partner anything about these two deals. It is barely possible that the partner might have consented to the deal, but now that the evidence has brought out the entire transaction, the defendant objects to it all, as he has a right to do.

The law requires the utmost frankness and absolute honesty in the dealings of one partner with another. As trustees, they cannot derive a secret profit from partnership transactions unknown to the other. See Smith v. Jones, 18 Neb. 481, 25 N. W. 624; Hughes v. Swartz, 33 Neb. 276, 50 N. W. 5.

" '* * * a partner, subject to the provisions of this chapter and to any agreement between the partners, has an equal right with his partners to possess specific partnership property for partnership purposes; but he has no right to possess such property for any other purpose without the consent of his partners.' " Kraus v. Kraus, 250 N. Y. 63, 164 N. E. 743.

Partners must exercise the utmost good faith in all their dealings with the members of the firm. A partner must at all times act for the common benefit of all. He must not take advantage of a partner by the slightest concealment or misrepresentation of any kind. See 40 Am. Jur., Partnership, § 128, p. 217.

"Law will not permit those associated in relationships

in which mutual confidence and trust are ingredients to put themselves in position where their individual interests may have tendency to cause them to relax in their vigilance for the common good, or to make secret individual profits out of common activities." Johnson v. Ironside, 249 Mich. 35, 227 N. W. 732.

The trial court having heard all the testimony of each of these partners, and having reached the conclusion that, under the evidence and the law, the tilt dozer and scraper were partnership property, we find that he was right and such assignment of error is without merit.

As to the assignment of error that the accounting made does not conform to the evidence, it must be noted that all of the partnership books of account were kept by plaintiff, and that, in addition thereto, he mingled his own personal accounts of receipts and expenditures with those of the partnership, keeping only one set of books for both. This made it a difficult task for the certified public accountants to work out the final figures. However, the final accounting was presented to the court, and in the argument each counsel called the court's attention to any discrepancy in making charges or giving credits, and after a careful consideration of the whole matter the court approved the final figures worked out by the certified public accountants. We therefore find that the trial court was correct in its approval thereof. We have reached the conclusion that the decree of the trial court arrived at in the case at bar was in accordance with the evidence and the law, and should be affirmed.

AFFIRMED.