W. CLARKE SWANSON, JR., 1950 TRUST UNDER INSTRUMENT DATED JANUARY 3, 1955, SWANCO TRUST COMPANY, TRUSTEE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent CAROL SWANSON RHODEN, 1950 TRUST UNDER INSTRUMENT DATED JANUARY 3, 1955, SWANCO TRUST COMPANY, TRUSTEE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent GEROCK HURLEY SWANSON, 1950 TRUST UNDER INSTRUMENT DATED JANUARY 3, 1955, SWANCO TRUST COMPANY, TRUSTEE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Swanson v. Commissioner
Docket Nos. 469-72, 470-72, 471-72.
United States Tax Court
T.C. Memo 1974-61; 1974 Tax Ct. Memo LEXIS 260; 33 T.C.M. (CCH) 296; T.C.M. (RIA) 74061; March 11, 1974, Filed. *260 S, and his mother, established separate trusts for S's children. Under the provisions of each trust, S (as maker) had the right to amend or interpret the trust instruments. In December 1957 J (as trustee of the three trusts) and S entered into a partnership agreement valid under the laws of the State of Nebraska. The general purpose of the partnership was stated to be the development of real estate. The specific purpose of the partnership was the development of unimproved real estate owned jointly by S and his brother. The property was eventually developed by S and his brother as individuals. On December 12, 1957, the trusts acquired life insurance policies on the life of S for a valuable consideration. Upon S's death, the proceeds were paid to the partnership. Held: The parties did not intend to join together in the present conduct of partnership business. Therefore, there is no valid partnership for Federal income tax purposes. Held: S is treated as the owner of the assets of the three trusts to the extent of his contributions. Sec. 674, I.R.C. 1954; Held further, the insurance proceeds received by the trusts are excludable from gross income *261 to the extent of S's ownership of the trusts' properties. Sec. 101, I.R.C. 1954. Donald R. Osborn and William F. Indoe, for the petitioners. Robert J. Murray, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined deficiencies in petitioners' income taxes for the year ending December 31, 1961, as follows: Petitioner
Amount of Deficiency Carol Swanson Rhoden Trust
$95,175.43
Gerock Hurley Swanson Trust
97,593.60
W. Clarke Swanson, Jr. Trust
95,126.02
*263 The issue is whether life insurance proceeds received by the W. Clarke Family Partnership are excludable from gross income under section 101(a) (1). [1]
FINDINGS OF FACT Swanco Trust Company (hereinafter referred to as petitioner) is trustee of the W. Clarke Swanson Jr. Trust, the Carol Swanson Rhoden Trust and the Gerock Hurley Swanson Trust (hereinafter referred to collectively as the Swanson Trusts). At the time the petitions were filed, petitioner's business address was in Omaha, Nebraska. Federal fiduciary income tax returns (Forms 1041) were filed for taxable year 1961 with the district director of internal revenue in Omaha, Nebraska. On December 21, 1950, Caroline Gerock Swanson (hereinafter referred to as Caroline) transferred common stock to W. Clarke Swanson (hereinafter referred to as W. Clarke) as trustee upon oral declaration of trust to establish trusts for W. Clarke Swanson Jr., Gerock H. Swanson and Carol Ann Swanson. At the time of transfer, the stock had a fair market value of $3,000 for each trust. On various *264 dates between January 2, 1952 and January 6, 1955, W. Clarke transferred stock which he owned to himself as trustee under the W. Clarke Swanson Jr. Trust, the Gerock H. Swanson Trust and the Carol Ann Swanson Trust in the amounts of $30,368.17, $30,893.17 and $30,368.17, respectively. On January 3, 1955, W. Clarke codified the Swanson Trusts established by gifts from himself and Caroline. W. Clarke was named as trustee of each trust. Each trust contained a provision as follows: 11. The Trust instrument shall be subject to interpretation or amendment by the maker but any interpretation or amendment made shall not vest in the maker any right to property, income or corpus except as in the relationship of Trustee for the beneficiary hereof. The trustee of each trust was given extensive powers to deal with the properties of the trust. The trusts were irrevocable. On January 14, 1955, W. Clarke executed an interpretation of the trusts which stated that the discretion and responsibility of determining whether payments are to be made from the trusts for the maintenance of the beneficiaries during minority or majority rests wholly with the trustee. On June 14, 1955, W. Clarke *265 resigned as trustee of the Swanson Trusts and executed an amendment appointing Cecil A. Johnson (hereinafter referred to as Johnson) as trustee and amending the successor trustee provisions. On December 2, 1957, W. Clarke executed an interpretation stating that the trustee of the Swanson Trusts has the power to become a general or limited partner, on behalf of the trusts, in partnerships created to achieve the objectives of the trust. On May 22, 1958, W. Clarke executed an interpretation stating that the trustee has the "right and absolute authority" to borrow money for the Swanson Trusts.
On December 2, 1957, Johnson, as trustee for the Swanson Trusts, [2] and W. Clarke, in an individual capacity, signed an instrument entitled "W. Clarke Swanson Family Partnership" (hereinafter referred to as W. Clarke Family Partnership). This partnership was to begin business on January 1, 1958, and its stated purpose was to engage in the business of constructing, furnishing, care, upkeep, rental and sale of rental properties. The specific purpose of the partnership was to develop property in which W. Clarke owned a one-half undivided interest. The trustee of the Swanson Trusts was named as *266 the managing partner. The agreement stated that each of the partners had the right to withdraw from the partnership upon the giving of ninety days' written notice. Upon withdrawal of the individual partner the agreement provided as follows: 12. PAYMENT OF WITHDRAWAL OF INDIVIDUAL PARTNERS ACCOUNT: The payment of the withdrawal of the individual partners account shall be paid in cash without interest in four semi-annual installments commencing on a date ninety (90) days after the date fixed for valuation of the capital account of the withdrawal of the individual partner. On December 10, 1957, a certificate of partnership, signed by W. Clarke and Johnson, was filed with the Douglas County Clerk, Douglas County, Nebraska. Under the partnership agreement, W. Clarke was to contribute the use of a one-half undivided interest in Lot 4, Indian Hills Addition to the City of Omaha, with the value to be ascertained by appraisal at the time of conveyance. Lot 4 was part of a parcel of land, which, as of December 2, 1957, was held by The Malvern Company, *267 Inc. (hereinafter referred to as Malvern) a Nebraska corporation, the stock of which was jointly owned by W. Clarke and his brother Gilbert C. Swanson (hereinafter referred to as Gilbert). Upon liquidation of Malvern the entire parcel was conveyed to W. Clarke and Gilbert as tenants in common by warranty deed on January 3, 1958. Under a family partnership agreement known as the "Gilbert C. Swanson Family Partnership," (hereinafter referred to as Gilbert Family Partnership) Gilbert was to contribute his undivided one-half interest in Lot 4. The Gilbert Family Partnership consisted of Gilbert as an individual and Johnson as trustee of four trusts established for Gilbert's children. [3] Neither W. Clarke nor Gilbert made any formal transfer of their interests in Lot 4 to their respective family partnerships. Under the partnership agreement, the Swanson Trusts were to contribute life insurance policies on the life of W. Clarke having face values of $1,900,000 and cash surrender values of $245,492. These policies *268 initially were owned by C.A. Swanson & Sons (hereinafter referred to as Swanson Company), a Nebraska corporation the stock of which was owned primarily by W. Clarke and Gilbert. The Swanson Company was acquired by the Campbell Soup Company in May 1955, at which time the policies were purchased by the Carl and Caroline Swanson Foundation, Inc. On December 12, 1957, the Swanson Trusts purchased the policies from the foundation for an aggregate consideration of $119,671. On December 12, 1957, W. Clarke and Johnson signed an authorization for either of them to act for the W. Clarke Family Partnership in actions with The Omaha National Bank of Omaha, Nebraska. At the same time, the family partnership opened a checking account with that bank, W. Clarke and Johnson being authorized to sign checks. In 1957 Leo A. Daly (hereinafter referred to as Daly) an individual in the architectural and engineering business, was approached by W. Clarke and Gilbert regarding plans to develop Lot 4 of the Indian Hills property. W. Clarke and Gilbert told Daly that they were representing their respective family partnerships in the transaction. In February 1958, an oral agreement was reached with *269 Daly that an office building would be constructed at 8401 West Dodge Road, Omaha, Nebraska (hereinafter referred to as the 8401 Building) which was to be built on Lot 4 of the Indian Hills property. Bids for the primary construction contracts for the 8401 Building were taken on March 4, 1958. The general contract was awarded to A. Borchman Sons Company (hereinafter referred to as Borchman Company) by virtue of a contract between Borchman Company and the Gilbert Family Partnership dated April 2, 1958. Contracts for the plumbing work and the electrical work were signed on April 2, 1958 with the J.J. Hanighen Company and the Evans Electrical Construction Co. of Nebraska, respectively. Both of these contracts were entered into between the contractors and the Gilbert Family Partnership. Each of the three contracts was signed by Gilbert, as partner of the Gilbert Family Partnership, and Johnson as trustee of the trust partners of the Gilbert Family Partnership. On May 16, 1958, Guarantee Mutual Life Company and United Benefit Life Insurance Company (hereinafter referred to as the insurance companies) issued a joint mortgage commitment in the amount of $730,000 with respect to the 8401 *270 Building. The mortgage commitment letter was addressed to "8401 Building, A Partnership…Attention: Mr. Cecil Johnson." As security the agreement required a first mortgage on the 8401 Building, a note personally signed by Gilbert and his wife, a pledge by written agreement between the parties of 59,572 shares of Campbell Soup Company, and an assignment of one million dollars of life insurance on the life of Gilbert. Construction of the 8401 Building began in May 1958. Construction financing for the 8401 Building was obtained initially from The Omaha National Bank and subsequently from the United States National Bank. W. Clarke and Gilbert took ownership of the 8401 Building in their individual capacities. On December 15, 1959, W. Clarke and Gilbert obtained, in their individual capacities, a mortgage loan in the amount of $730,000 from the insurance companies. The mortgage was executed on behalf of the insurance companies by the Omaha National Bank as trustee and signed by both W. Clarke and Gilbert. [4] Acquisition of the loan by the brothers as individual owners of the 8401 Building resulted in a significant decrease in collateral required as security. *271 On April 15, 1961, at the age of fifty-four, W. Clarke died unexpectedly of a coronary occlusion. He died owning an undivided one-half interest in the 8401 Building which was passed to the Swanson Trusts. The W. Clarke Family Partnership filed Federal partnership tax returns for taxable years 1958 through 1961. For taxable years 1958 through 1960, the returns reported no income. For taxable year 1961, the return reported a net loss of $7,954.98 arising from rental of the 8401 Building. Upon W. Clarke's death, the W. Clarke Family Partnership received life insurance proceeds in the amount of $913,954.09, the entire amount of which it excluded from income. The partnership's total investment in the policies as of W. Clarke's death was $208,565.01. Swanco replaced Johnson as trustee of the Swanson Trusts on November 1, 1967. The W. Clarke Family Partnership agreement was not amended prior to W. Clarke's death. As of the date of death, approximately ninety-one percent of the value of the Swanson Trusts was attributable to transfers by W. Clarke and nine percent by Caroline. OPINION *272 Section 101(a)[5] states that, except as otherwise provided, amounts received under a life insurance policy are not includable in gross income. Section 101(a) (2) (B) provides that life insurance proceeds are includable in gross income in the case of a transfer for valuable consideration unless the transfer is to the insured, to a partner of the insured or to a partnership in which the insured is a partner. The issue is whether the exception to the transfer for valuable consideration rule of section 101 is applicable to the transfer of life insurance policies to the Swanson Trusts. *273 Petitioner's first contention is that the W. Clarke Family Partnership is a valid partnership for Federal income tax purposes in which W. Clarke and the Swanson Trusts were partners. Thus, the transfer of the life insurance policies to the Swanson Trusts was to a partner of the insured (W. Clarke). Respondent contends that the exception to the transfer for valuable consideration rule of section 101 does not apply because the W. Clarke Family Partnership is not a valid partnership for income tax purposes.
The question of the validity of a family partnership arrangement is one of fact which turns upon whether the parties in good faith and acting with a business purpose intend to join together in the present conduct of the enterprise. Commissioner v. Culbertson, 337 U.S. 733 (1949). The W. Clarke Family Partnership was validly organized under the laws of the State of Nebraska; however, that fact is not decisive for Federal income tax purposes. Commissioner v. Tower, 327 U.S. 280 (1946), and Beulah H. Nichols, 32 T.C. 1322 (1959). On the other *274 hand, the utilization of a written partnership agreement and the opening of a bank account in the name of the partnership are factors in favor of a finding that a valid partnership existed for tax purposes. The balance of the evidence in this case, however, does not support petitioner's contention that the W. Clarke Family Partnership was operated as a valid partnership for Federal income tax purposes. The fact that W. Clarke retained title to Lot 4 in his own name is not crucial, for the laws of the State of Nebraska permit a partner to retain and convey partnership property in an individual name. Neb. Rev. Stat. section 67-310 (1943). W. Clarke's action with regard to the property, however, did not reflect activities of a partner holding property in a partnership capacity. Under the laws of the State of Nebraska, the chief criterion for determining whether particular property belongs to a partnership is the intent of the partner to devote it to partnership business. Norcross v. Gingery, 181 Neb. 783, 150 N.W. 2d 919 (1967), *275 and Bode v. Prettyman, 149 Neb. 179, 30 N.W. 2d 627 (1948). The present facts indicate that W. Clarke did not intend to devote the property to partnership business. Johnson testified that W. Clarke contributed Lot 4 to the partnership for development; yet, W. Clarke and Gilbert took ownership of the 8401 Building in their individual capacities. If the property was in fact partnership property its use by W. Clarke in an individual capacity would have required a withdrawal of the property from the partnership or an acquisition of the property by W. Clarke from the partnership. Johnson testified that W. Clarke reimbursed the trusts for funds previously advanced and therefore acquired the partnership interests in the trusts. Petitioner, however, has failed to produce any other evidence that W. Clarke in fact "reacquired" use of Lot 4 for his individual enterprise. Nor is there any evidence to indicate that W. Clarke withdrew Lot 4 from the partnership. If the partnership was valid and the property was actually contributed to it, the partnership agreement required that withdrawal of the individual partner be accomplished by payments of cash. The withdrawal of the property *276 itself would therefore be in contravention of the partnership agreement. These facts create the inference that Lot 4 was never contributed to the W. Clarke Family Partnership. There was also testimony given by Johnson that the specific purpose of the formation of W. Clarke Family Partnership was the development of Lot 4; yet by his actions, W. Clarke never contributed the use of or title of Lot 4 to the partnership. Without use of or title to property to be developed by the W. Clarke Family Partnership, W. Clarke showed no present intent to have the partnership operate in fulfillment of its business purpose. Petitioner contends that the partnership participated in the development of Lot 4 until 1958, when "for valid business reasons" the Swanson brothers decided to develop the property individually. Their reasons were generally given as obtaining better financing terms, allowing the trusts to enter other business areas, and allowing Gilbert and W. Clarke to utilize the depreciation deductions which were anticipated from the operation of the 8401 Building. These may be valid reasons why W. Clarke and Gilbert opted to develop the property as individuals rather than in a partnership *277 form; however, they do not provide any proof that prior to 1958 the W. Clarke Family Partnership was operated as a partnership for Federal tax purposes. Examining the entire record of this case, we do not believe that W. Clarke intended to nor actually did contribute his interest in Lot 4 to the partnership. This finding results in two conclusions. First, W. Clarke was not a partner in the W. Clarke Family Partnership. See Hugh C. Jackson, 19 T.C. 133 (1952), affd. 207 F.2d 857 (C.A. 10, 1953). Second, W. Clarke did not intend to operate within the W. Clarke Family Partnership and therefore it is not a valid partnership for Federal income tax purposes. Furthermore, the evidence fails to indicate that the W. Clarke Family Partnership ever became involved in any part of the development of Lot 4. The agreements entered into with the contractor to build the 8401 Building were made in the name of the Gilbert C. Swanson Family Partnership and signed by Gilbert and Johnson as partners and trustee of the trust partners in the Gilbert Family Partnership. Daly and Borchman both testified that it was their understanding that they were dealing with Gilbert *278 and W. Clarke in their capacities as representatives of the two family partnerships. More crucial, however, are the dealings with the institutions providing the financing for the development of the 8401 Building. Edward Lyman, president of the bank which provided initial financing for the 8401 Building, testified that the building was originally to be constructed by a partnership but was ultimately taken under individual ownership. Lyman, however, testified that he could not recall who was to participate in the partnership venture. Johnson testified that the insurance companies which made the original mortgage commitment and ultimate loan knew that they were dealing with two family partnerships. The evidence concerning the knowledge of the insurance companies is wholly inadequate. The only evidence offered is the original mortgage commitment addressed to the "8401 Building - a Partnership." We have no way of knowing what organization the insurance companies thought they were addressing. The original commitment letter required only that Gilbert and his wife sign the note and provide security. The ultimate loan, however, was made on lesser security when both Gilbert and W. Clarke *279 signed the note. We are at a loss to explain why the insurance companies were willing to take less security upon making the actual loan to Gilbert and W. Clarke if, as petitioner contends, the insurance companies were aware that they were dealing with both the Gilbert Family Partnership and the W. Clarke Family Partnership and presumably could have requested that W. Clarke also sign the original note and provide security. The only person who could have explained the insurance companies' understanding of whom they were dealing with are the representatives of the insurance companies who handled the transaction. No witnesses from the insurance companies were called to testify. Since petitioner has the burden of proof, we can only infer that their testimony would have been unfavorable to petitioner. Samuel Pollack, 47 T.C. 92 (1966), affd. 392 F.2d 409 (C.A. 5, 1968) and The Wichita Terminal Elevator Company, 6 T.C. 1158 (1946), affd. 162 F.2d 513 (C.A. 10, 1947). The totality of the evidence in this case indicates that the parties did not intend to nor did they actually operate the W. Clarke Family Partnership as a viable *280 partnership. It also indicates that W. Clarke never became a partner by virtue of his failure to contribute any property to the organization. Therefore, the transfer of the life insurance policies to the Swanson Trusts for value was not made to a partnership in which the insured (W. Clarke) is a partner nor to a partner of the insured. Petitioner's alternative contention is that the insurance proceeds should be excluded from income on the basis that the insurance policies were, in effect, transferred to the insured because W. Clarke must be treated as the owner of the Swanson Trusts under section 674 or 675. Respondent contends that W. Clarke was not the owner of these trusts under either section 674 or 675.
Section 674[6] provides that, with certain exceptions not present here, a grantor is treated as the owner of any portion of a trust in which the beneficial enjoyment of the corpus or income is subject to a power of disposition exercisable by the grantor.If the grantor can affect the beneficial enjoyment, except as prescribed in the statute, he is treated as the owner of that portion *281 of the trust. Section 1.674(a)-1(a), Income Tax Regs.
Section 11 of each of the three trust instruments is clear on its face. Each section provides that the maker (W. Clarke) has the right to interpret or amend the trust instruments, limited only in that he could not vest any ownership in himself. Respondent apparently does not contest the validity of these trust provisions nor do we perceive any reason why W. Clarke could not retain a power to amend the trusts at least to the extent of the property which he contributed to the trusts. With this almost unlimited power to amend the trusts, W. Clarke presumably could add or change beneficiaries or alter the trust provisions so that *282 he could have complete control over the trust property. The provisions of section 674 are similar to the law prior to the passage of the 1954 Code. H. Rept. 1337, 83d Cong., 2d Sess., p. 63 (1954). Both parties have cited as support for their positions cases which relate to pre-1954 law. Without going into those cases in detail, we note that the weight of authority supports the position of petitioner. Commissioner v. Buck, 120 F.2d 775 (C.A. 2, 1941); Laganas v. Commissioner, 281 F.2d 731 (C.A. 1, 1960); and Warren H. Corning, 24 T.C. 907 (1955), affd. 239 F.2d 646 (C.A. 6, 1956).[7] Furthermore, respondent's pre-1954 regulations from which section 674 was primarily drawn provided that the beneficial enjoyment of the corpus or income of a trust is subject to a power of disposition when the grantor has the power to alter the trust instrument. Section 39.22(a)-21(d), Regs. 118. The only case cited by respondent in support of his position is Hawkins v. Commissioner, 152 F.2d 221 (C.A. 5, 1945). In Hawkins, the grantor *283 had reserved the power to alter or modify the provisions regarding distribution by virtue of an amendment "executed by the parties." The Fifth Circuit interpreted this clause to give the taxpayer the right to amend only in conjunction with the trustee, a party over which the grantor had no power or control.In the present situation, W. Clarke's power to amend was not subject to acceptance by the trustee who, in any event, could have been removed by the grantor. Furthermore, the power to amend, in Hawkins, was limited to the distribution provision, whereas the power retained by W. Clarke was limited only with respect to his ability to vest ownership of trust property in himself. These factors make the Hawkins case distinguishable from the present situation. W. Clarke retained virtually unlimited control over the administration of the trusts. He amended or executed an interpretation of the trusts on at least four occasions to provide that: (a) the trustee has sole discretion in determining maintenance payments to the beneficiaries; (b) a new trustee be appointed and new provisions regarding successor trustees be added; (c) the trusts could become partners in partnerships; and (d) *284 the trustee could borrow money on behalf of the trusts. W. Clarke's retention of powers of administration over the trusts, his actual use of such powers as shown above, and his retention of the right to reappoint himself trustee of the trusts (thereby giving himself extensive powers to deal with the properties of the trust) require that he be treated as the owner of the trusts under section 674. We hold that W. Clarke would be taxed as owner of the Swanson Trusts under section 674. The only issue argued by the parties was whether W. Clarke, under the provisions of the three trusts, would be taxed as the owner of the trust properties under section 674. Respondent apparently concedes that, once this question is determined favorably for petitioner, W. Clarke would be considered to be the insured for purposes of applying section 101. [8] Therefore, we hold that, to the extent W. Clarke is considered to be the owner of the trusts under section 674, the insurance proceeds are excludable from gross income upon receipt by the trusts. *285 W. Clarke will be considered to be the grantor only as to the portions of the trusts that are equal to the percentage of property contributed by him. A taxpayer is considered to be a grantor only with regard to the property actually contributed to the trust, Parker v. Commissioner, 166 F.2d 364 (C.A. 9, 1948), and which he owns at the time of the contribution. Curtis A. Herberts, 10 T.C. 1053, 1062, 1063 (1948). Caroline is considered to be the grantor as to the remaining portions of the trusts. Decisions will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise indicated. ↩
2. Unless stated otherwise, all references to the activities of Johnson are in his capacity as trustee of the Swanson Trusts. ↩
3. The validity of the Gilbert Family Partnership has not been raised in this case. Accordingly, we make no finding as to its validity for Federal income tax purposes. ↩
4. W. Clarke's wife, Florence, also signed the mortgage; however, she did not obtain any ownership interest in the 8401 Building. ↩
5. SEC. 101. CERTAIN DEATH BENEFITS. (a) Proceeds of Life Insurance Contracts Payable by Reason of Death. - (1) General rule. - Except as otherwise provided in paragraph (2) and in subsection (d), gross income does not include amounts received (whether in a single sum or otherwise) under a life insurance contract, if such amounts are paid by reason of the death of the insured. (2) Transfer for valuable consideration. - In the case of a transfer for a valuable consideration, by assignment or otherwise, of a life insurance contract or any interest therein, the amount excluded from gross income by paragraph (1) shall not exceed an amount equal to the sum of the actual value of such consideration and the premiums and other amounts subsequently paid by the transferee.The preceding sentence shall not apply in the case of such a transfer - (A) if such contract or interest therein has a basis for determining gain or loss in the hands of a transferee determined in whole or in part by reference to such basis of such contract or interest therein in the hands of the transferor, or, (B) if such transfer is to the insured, to a partner of the insured, to a partnership in which the insured is a partner, or to a corporation in which the insured is a shareholder or officer. ↩
6. SEC. 674. POWER TO CONTROL BENEFICIAL ENJOYMENT. (a) General Rule. - The grantor shall be treated as the owner of any portion of a trust in respect of which the beneficial enjoyment of the corpus or the income therefrom is subject to a power of disposition, exercisable by the grantor or a nonadverse party, or both, without the approval or consent of any adverse party. ↩
7. See also Philip S. Harper, a Memorandum Opinion of this Court dated Feb. 24, 1944. ↩
8. We make no finding with regard to the issue of whether a grantor taxable under section 674 would be considered to be the insured for purposes of applying section 101↩.