MARTIN JULIUS MISCHKE, PERSONAL REPRESENTATIVE OF THE ESTATE OF STANLEY MISCHKE, DECEASED, APPELLEE, V. GORDON MISCHKE ET AL., APPELLANTS.

530 N.W.2d 235

Filed April 7, 1995.   No. S-93-649.

Kevin L. Reiner and Steven M. Johnson, of Johnson, Heidepriem, Miner & Marlow, and Patrick J. Birmingham for appellants.

Larry R. Demerath, of Demerath Law Offices, for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ.

FAHRNBRUCH, J.

In this equity action, Martin Julius Mischke, personal representative of the estate of his brother Stanley Mischke, sought an accounting and return to Stanley's estate of personal and real property he alleges was unlawfully transferred to his brothers Jerome, Gordon, and Cyrus Mischke.

Jerome, Gordon, and Cyrus appeal from the district court's order finding that they hold Stanley's interest in three parcels of real estate in a constructive trust and must convey the real and personal property transferred to them to Stanley's estate.

Upon de novo review of the record, we affirm the judgment of the district court for Knox County as modified herein and remand the cause to that court for further proceedings.

## STATEMENT OF FACTS

Stanley, Jerome, Gordon, Cyrus, and Wayne Mischke operated a farm and pastureland that was originally owned by their parents in the Crofton area. The survivors of these brothers claim that they utilized the farm and pastureland as partners under the name "Mischke Hereford Ranch." The record fails to reflect that a written partnership agreement was ever drafted. Wayne died in 1962. Then the land was utilized by Stanley, Jerome, Gordon, and Cyrus.

In some respects, the Mischke Hereford Ranch appears to

have performed as a partnership. Profits went into the Mischke Hereford Ranch account, and expenses were paid out of that account. The brothers shared profits and losses.

In other respects, the brothers' actions did not give the appearance of a partnership. When Wayne left the farm, his brothers did not pay him for any interest he may have had in the operation. The record does not reflect that Jerome, Gordon, and Cyrus made any capital contributions. Stanley acted more as a boss than as an equal partner. In a letter to two of his sisters, Jerome described Stanley as "no easyer [sic] to live with," and opined that Stanley was "certinly [sic] not going to give up being boss and owner."

Historically, upon the death of the boys' father on October 2, 1930, the boys' mother, Louise Mischke, became owner of the land. In 1964, the mother conveyed the south half of Section 27, Township 33 North, Range 2 West of the 6th P.M., in Knox County (the homeplace), to Stanley, Jerome, and Gordon. She also conveyed other real estate to Stanley, Jerome, Gordon, and Cyrus. In 1965, Stanley, Jerome, and Gordon conveyed the homeplace back to their mother to avoid gift taxes. In 1972, the mother died and, in her will, devised the homeplace to Stanley as sole devisee.

Stanley lived alone on the homeplace. Nevertheless, the Mischke Hereford Ranch paid the utilities and property taxes on the homeplace, as well as making some improvements. Profits generated from the homeplace went into the Mischke Hereford Ranch account.

The evidence is in conflict as to what Stanley intended to do with the property. Cyrus testified that Stanley had discussed with him transferring the homeplace to the brothers. Gordon and Jerome testified that an understanding existed that Stanley would convey the homeplace back to the brothers. However, Jerome, in a 1990 letter to two of his sisters, wrote that "[t]he three of us worry about what is going to happen if something would happen to [Stanley] because so far as we know he has done nothing about ownership. He won't even talk about it . . . ." The Mischke family attorney testified that Stanley never discussed with him whom he wanted to have his property. Martin Mischke testified that Stanley, up to the year of his

death, expressed indecision regarding estate planning.

On July 19, 1991, Stanley become ill and was taken to a Yankton, South Dakota, hospital where a CAT scan revealed a blood clot on his brain.

At his own initiative, Jerome contacted Jerry Pollard, a South Dakota attorney, about preparing Stanley's will. Pollard arrived at the hospital, and after a short discussion with Stanley, Pollard became concerned that Jerome and Gordon were pressuring and coaxing Stanley to do something. Pollard wheeled Stanley away from his brothers in order to have a 15- to 30-minute private discussion with him. Stanley directed Pollard to prepare a will dividing the property evenly among all his living brothers. Stanley further stated he was concerned about pressure he was receiving from family members.

Stanley also instructed Pollard to draft a power of attorney appointing Jerome as his attorney in fact. While the power of attorney authorized Jerome to sell and convey Stanley's real estate, it did not authorize him to transfer Stanley's interest in real and personal property to Jerome, Gordon, and Cyrus without compensation or in connection with any estate plan.

Pollard drafted the will and power of attorney in his office. Jerome and Gordon picked up the documents and took them to a Sioux City, Iowa, hospital, where Stanley had been transferred for surgery. Jerome and Gordon presented the will and power of attorney to Stanley, who signed them on the night of July 19 before going into surgery. Both Jerome and Gordon testified that Stanley did not read the will prior to signing it before witnesses and a notary public. There appears to be no evidence in the record as to whether Stanley read the power of attorney before signing it.

After Stanley signed the will, Jerome and Gordon had an opportunity to talk to Stanley before he went into surgery. During this time, Stanley read the will and stated that it was not what he wanted. Jerome testified that Stanley said he did not want his brothers Martin and Myron Mischke to share equally with Jerome, Gordon, and Cyrus. Stanley tore the will in half and threw it away. Thereafter, according to both Jerome and Gordon, Stanley instructed them to go ahead with the power of attorney. Jerome testified that Stanley orally instructed him to

transfer the property if Stanley did not come out of his operation. Jerome further testified that if Stanley were to come out of his operation, the transfer of his property "would be taken care of as it went along."

On July 23, 1991, while Stanley was still alive but in a coma, Jerome, purporting to act as attorney in fact, transferred to himself, Gordon, and Cyrus Stanley's interest in the following described real estate: the southwest quarter of Section 20, the northwest quarter of Section 29, the northeast quarter of the northeast quarter in Section 30, the southeast quarter of the southeast quarter of Section 19, the east half of Section 20, and the west half and the northwest quarter of the northeast quarter of Section 21, all in Township 33 North, Range 2 West of the 6th P.M., in Knox County. Jerome also transferred Stanley's interest in the south half of Section 27, Township 33 North, Range 2 West of the 6th P.M., in Knox County, to himself and Gordon.

On July 24, 1991, Jerome, while Stanley was still in a coma, transferred Stanley's interest in the southwest quarter and the south half of the southeast quarter of Section 15, as well as the south half of the north half of the southwest quarter and the south half of the southwest quarter of Section 14, Township 33 North, Range 2 West of the 6th P.M., in Knox County, to himself, Gordon, and Cyrus.

Jerome transferred Stanley's personal checking account to himself, Gordon, and Cyrus and Stanley's certificates of deposit to himself and Gordon. Jerome also transferred various personal property from Stanley to himself, Gordon, and Cyrus. All transfers were made without Stanley or his estate receiving any consideration.

On July 26, 1991, Stanley died.

After learning of the transfers by Jerome to himself and his two brothers Gordon and Cyrus, Martin filed a petition for adjudication of intestacy and was appointed personal representative of Stanley's estate.

As personal representative, Martin filed a petition against Jerome, Gordon, and Cyrus alleging that Jerome, while acting in a fiduciary capacity, unlawfully transferred, conveyed, and/or converted all of Stanley's real and personal property to himself,

Gordon, and Cyrus. The petition further alleged that such transfers were made contrary to the authority of the durable power of attorney.

In their answer, Jerome, Gordon, and Cyrus generally denied Martin's allegations and in their counterclaim alleged that Martin's petition clouded their title to the real estate and depreciated its market value. The brothers claimed that the partnership of Mischke Hereford Ranch beneficially and equitably owned the real property in question.

The district court held that Jerome, as Stanley's attorney in fact, did not have authority to transfer Stanley's real and personal property to himself and his brothers without full and adequate consideration. The court held that Jerome, Gordon, and Cyrus hold the real and personal property transferred to them in constructive trust for the estate of Stanley and ordered that they convey the property to the personal representative. The court dismissed the brothers' counterclaim.

The brothers' motion for a new trial was overruled, and this appeal followed.

## ASSIGNMENTS OF ERROR

Restated, Jerome, Gordon, and Cyrus claim that the district court erred by (1) failing to find that the property in question was a partnership asset; (2) failing to conclude that Jerome acted within his authority under the durable power of attorney; (3) finding that Jerome transferred the property in question by gift; (4) ordering Jerome, Gordon, and Cyrus to hold in constructive trust Stanley's real and personal property which had been transferred to them by Jerome; and (5) ordering Jerome, Gordon, and Cyrus to transfer the property in question to Stanley's estate.

We need only address the first two assignments of error because they are dispositive of this appeal: the ownership of the property and the authority granted Jerome in the power of attorney.

## STANDARD OF REVIEW

An action for an accounting of estate property is in equity. See *Fletcher v. Mathew*, 233 Neb. 853, 448 N.W.2d 576 (1989). In an appeal of an equity action, an appellate court tries

the factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court. *Nebraska Irrigation, Inc. v. Koch*, 246 Neb. 856, 523 N.W.2d 676 (1994). When the credible evidence is in conflict on a material issue of fact, an appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. See *Synacek v. Omaha Cold Storage, ante* p. 244, 526 N.W.2d 91 (1995).

## ANALYSIS

In their first assignment of error, Jerome, Gordon, and Cyrus contend that Stanley's real property which was transferred to them by Jerome was, at all times relevant, a partnership asset of the Mischke Hereford Ranch. Their argument assumes that the Mischke Hereford Ranch is a legal partnership. We need not address the merits of this assumption because even if a partnership existed, there is insufficient evidence that Stanley intended his property to be owned by the Mischke Hereford Ranch.

Stanley alone had title to the personal and real property which Jerome transferred to himself, Gordon, and Cyrus. The Mischke Hereford Ranch used and profited from Stanley's property and paid taxes and made improvements to the homeplace. The chief criterion for determining whether certain property is or is not that of a partnership is the intent of the partners to devote it to partnership purposes. See *Bode v. Prettyman*, 149 Neb. 179, 30 N.W.2d 627 (1948). Obviously, this intent must include the intent of the titleholder of the property involved. Use of the property alone is not sufficient because an owner may intend to contribute only the use, as distinguished from the ownership, to the partnership. *Norcross v. Gingery*, 181 Neb. 783, 150 N.W.2d 919 (1967). Similarly, the payment of taxes on the property may be probative of intent but does not by itself establish the property as a partnership asset. See, *Standring v. Standring*, 794 P.2d 1089 (Colo. App. 1990); *Estate of Schreiber*, 68 Wis. 2d 135, 227 N.W.2d 917 (1975).

Jerome, Gordon, and Cyrus testified that an understanding

existed that Stanley would convey the property to the partnership. There is nothing in the record to reflect that his "understanding" was ever reduced to writing. This testimony is not consistent with Martin's testimony that Stanley did not know what to do with the property; with the testimony of the Mischke family attorney, who did estate planning for the family yet was never approached by Stanley regarding any intent to transfer the property to the partnership or to anyone; with Jerome's letter to his two sisters complaining that Stanley would not even talk of his intentions regarding the property and acknowledging that Stanley was the owner of the property; and with the fact that Stanley had the property for nearly 20 years and never attempted to convey it to the partnership, despite receiving pressure from his brothers.

Thus, the record fails to reflect an intent on the part of Stanley for the property in question to be a partnership asset. Stanley owned the homeplace and had an interest in the remainder of the real estate involved here. To the extent that the Mischke Hereford Ranch was a partnership, it merely enjoyed the use of Stanley's land and never had an ownership interest in it. We agree with the trial court that Jerome, Gordon, and Cyrus are not entitled through the transfers by Jerome to the ownership of Stanley's interest in the real estate.

In the second assignment of error, the appellants contend that Jerome acted under the authority of the durable power of attorney when he transferred Stanley's personal and real property to himself, Gordon, and Cyrus.

A power of attorney authorizes another to act as one's agent. *Fletcher v. Mathew*, 233 Neb. 853, 448 N.W.2d 576 (1989). An agent is prohibited from profiting from the agency relationship to the detriment of the principal or having a personal stake that conflicts with the principal's interest in a transaction in which the agent represents the principal. *In re Estate of Lienemann*, 222 Neb. 169, 382 N.W.2d 595 (1986).

Jerome transferred Stanley's property to himself and his two brothers Gordon and Cyrus without consideration, to the detriment of Stanley's interest. The power of attorney executed by Stanley does not specifically, expressly, or even generally provide that Jerome had the authority to transfer any of

Stanley's real or personal property to himself or anyone else without full and complete consideration. No gift may be made by an attorney in fact to himself or herself unless the power to make such a gift is expressly granted in the instrument itself and there is shown a clear intent on the part of the principal to make such a gift. *Vejraska v. Pumphrey*, 241 Neb. 321, 488 N.W.2d 514 (1992). Absent express intention, an agent may not utilize his position for his or a third party's benefit in a substantially gratuitous transfer. *Id.* Clearly, the personal and real property transfers by Jerome as attorney in fact were beyond the scope of the powers granted Jerome by Stanley's durable power of attorney, and each and every such transfer was unlawful and void ab initio.

As a result of our finding on de novo review of the record that all transfers of real and personal property purportedly made under Stanley's durable power of attorney were void ab initio, Jerome, Gordon, and Cyrus are accountable to Stanley's estate not only for all of the property originally transferred to them, but also for any profits that they have made on account of receiving the property or that a reasonably prudent person would have realized from use, or for income from the fair market value of the property, whichever is greater. See *Schepers v. Lautenschlager*, 173 Neb. 107, 112 N.W.2d 767 (1962).

## CONCLUSION

The district court's judgment, as modified by this opinion, is affirmed, and the matter is remanded to that court for further proceedings consistent with this opinion.

AFFIRMED AS MODIFIED, AND CAUSE REMANDED FOR FURTHER PROCEEDINGS.