SOPHIA CHELOHA, PERSONAL REPRESENTATIVE OF THE ESTATE OF
ALPHONS CHELOHA, DECEASED, APPELLEE AND CROSS-APPELLANT,
V. ROBERT C. CHELOHA, APPELLANT AND CROSS-APPELLEE.
582 N.W. 2d 291

Filed July 17, 1998. No. S-96-360.

Richard K. Watts, of Mills, Watts & Nicolas, for appellant.

Clark J. Grant, of Grant, Rogers, Maul & Grant, for appellee.

CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

GERRARD, J.

In this equity action, Sophia Cheloha, as personal representative of the estate of Alphons Cheloha, deceased, filed a third amended petition in the district court, seeking an accounting from Alphons' brother, Carl C. Cheloha, and Carl's son, Robert C. Cheloha, as to all transactions they entered into on behalf of Alphons by virtue of a durable power of attorney. Sophia alleged that sums of money expended by Carl and Robert, in their capacities as Alphons' attorneys in fact, were not solely for the benefit of Alphons. Following a bench trial, the district court entered judgment, finding that Robert converted $33,495.05 in either principal or interest from certificates of deposit owned by Alphons to his own use and awarded Sophia that amount plus postjudgment interest and costs. Robert appeals, and Sophia cross-appeals.

## I. FACTUAL BACKGROUND

Alphons was a bachelor and retired farmer who lived in rural Platte County, Nebraska. In 1986, Alphons was admitted to a nursing home, but sometime later was able to return to his own home. However, in late July or August 1988, Alphons was again admitted to a nursing home, where he remained until his death on October 10, 1993.

Robert was Alphons' nephew and lived less than a mile from Alphons' home. During Alphons' lifetime, few people other than Robert paid any attention to Alphons or his needs. Robert cleared snow from Alphons' roads, trimmed his trees, provided transportation for him for doctor's appointments, and made arrangements for his medical and nursing home care. In addition, Robert paid Alphons' bills, managed his finances, and provided transportation for him to purchase his groceries.

Robert testified that in April 1986, he had a discussion with Alphons regarding Robert's desire to be compensated for the services that he had been providing to Alphons. Robert testified that he had this discussion with Alphons at the nursing home in the presence of Robert's wife and parents. According to Robert, as corroborated by his mother, Robert told Alphons that his care was more responsibility than Robert could handle, to which Alphons allegedly responded, "I am so glad that you have been helping me, that you are helping me, and I want you to be paid."

Robert testified that after this conversation, he discussed the matter with the family attorney, Cleo Robak. Robert told Robak what Alphons had said, and Robak told Robert that he was entitled to compensation. Robak testified by deposition that he was never informed or heard of any agreement between Alphons and Robert for the payment of compensation. Robak, however, did testify that sometime after problems began to surface with Alphons, Robak told Robert that he could charge a reasonable fee for whatever work he had done for Alphons, although no further details were discussed and no legal work was embarked upon by Robak to specifically deal with this issue.

On August 11, 1988, Alphons executed a durable power of attorney, naming Carl and Robert as his attorneys in fact. Robak testified that in preparing Alphons' power of attorney, Robak had no knowledge of any discussion between Alphons and

Robert regarding an agreement for the payment of compensation for services rendered by Robert pursuant to the power of attorney. The power of attorney instrument did not contain a provision authorizing Robert to compensate himself or a provision authorizing Robert to make gifts from Alphons' property.

On September 20, 1995, Sophia, as personal representative of the estate of Alphons, filed a third amended petition in equity in the district court, seeking an accounting from Carl and Robert as to all transactions they entered into on behalf of Alphons by virtue of the power of attorney. Sophia alleged that sums of money expended by Carl and Robert, in their capacities as Alphons' attorneys in fact, were not solely for the benefit of Alphons and were, in fact, paid to the detriment of Alphons. At the bench trial on the matter, Robert admitted that he used the power of attorney in order to convert $33,495.05 in certificates of deposit owned by Alphons to his own use. Robert, however, testified that he received these monies as compensation for services rendered by him pursuant to an oral contract with Alphons. Robert also admitted to using the power of attorney to make various purchases and disbursements with money from Alphons' checking account. Robert, however, testified that these various purchases or disbursements constituted either gifts, reimbursement of expenses, or compensation for services rendered.

Following the bench trial, the district court entered judgment, finding that Robert converted $33,495.05 in either principal or interest from certificates of deposit owned by Alphons to his own use and awarded Sophia that amount plus postjudgment interest and costs. The district court dismissed the petition as it related to Carl, since no evidence was submitted that he had ever come into possession, control, or management of Alphons' property. Robert appeals, and Sophia cross-appeals. We removed the case to our docket pursuant to our power to regulate the caseloads of the Nebraska Court of Appeals and this court. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## II. SCOPE OF REVIEW

An action for an accounting of estate property is in equity. *Mischke v. Mischke*, 247 Neb. 752, 530 N.W.2d 235 (1995). In

an appeal of an equity action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, however, that where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Schram Enters. v. L & H Properties*, 254 Neb. 717, 578 N.W.2d 865 (1998); *Mischke v. Mischke, supra*.

### III. ASSIGNMENTS OF ERROR

Robert's four assignments of error can be consolidated and restated into the following one: The trial court erred in finding that the conversion of Alphons' certificates of deposit represented a gift to Robert as Alphons' attorney in fact rather than compensation for services rendered pursuant to an express or implied contract.

In her cross-appeal, Sophia assigns the following two errors: The trial court erred in (1) determining that she was not entitled to a money judgment for funds wrongfully converted from Alphons' checking account to Robert's personal use pursuant to the power of attorney and (2) not awarding prejudgment interest.

### IV. ANALYSIS

#### 1. POWER OF ATTORNEY

A power of attorney authorizes another to act as one's agent. *Mischke v. Mischke, supra*; *Fletcher v. Mathew*, 233 Neb. 853, 448 N.W.2d 576 (1989). An agent has a duty to account to his or her principal for all property or funds which he or she has received or paid out on behalf of the principal. *Walker Land & Cattle Co. v. Daub*, 223 Neb. 343, 389 N.W.2d 560 (1986). The burden is upon the agent to prove a proper disposition of all property and funds which have been entrusted to him or her pursuant to a power of attorney, since the agent was the one who managed the property and funds and had control of the accounts. See *id*.

Generally, an agent is required to act solely for the benefit of his or her principal in all matters connected with the agency and adhere faithfully to the instructions of the principal. *Fletcher v.*

*Mathew, supra.* An agent and principal are in a fiduciary relationship such that the agent has an obligation to refrain from doing any harmful act to the principal. *Id.* An agent is prohibited from profiting from the agency relationship to the detriment of the principal. *Mischke v. Mischke, supra; In re Estate of Lienemann,* 222 Neb. 169, 382 N.W.2d 595 (1986).

It is well settled that no gift may be made by an attorney in fact to himself or herself unless the power to make such a gift is expressly granted in the instrument itself and there is shown a clear intent on the part of the principal to make such a gift. *Mischke v. Mischke, supra.* We adopted the foregoing rule in *Fletcher v. Mathew, supra,* in order to discourage fraud and abuse by attorneys in fact. Thus, absent express intention, an agent may not utilize his or her position for his or her or a third party's benefit in a substantially gratuitous transfer. *Mischke v. Mischke, supra.*

Robert asserts that his conversion of $33,495.05 in principal or interest from Alphons' certificates of deposit to his own use represented compensation for services rendered by him pursuant to an express oral contract or an implied contract and that, thus, the district court erred in awarding Sophia $33,495.05. At trial, however, Robert did not raise the theory that he properly converted Alphons' certificates of deposit pursuant to an implied contract. Therefore, on appeal, our sole inquiry is whether an express oral contract existed whereby Alphons agreed to pay Robert $33,495.05 in certificates of deposit as compensation for services rendered. See *Sunrise Country Manor v. Neb. Dept. of Soc. Servs.,* 246 Neb. 726, 523 N.W.2d 499 (1994) (cases are heard in state appellate courts on theory upon which they were tried). Robert claims that an express oral contract existed because Alphons had specifically told Robert in the presence of his immediate family that Alphons wanted Robert to be paid for his services.

A court of equity will not enforce a contract unless it is complete and certain in all its essential elements. *Sayer v. Bowley,* 243 Neb. 801, 503 N.W.2d 166 (1993). The parties themselves must agree upon the material and necessary details of the bargain, and if any of these be omitted or left obscure or indefinite so as to leave the intention of the parties uncertain respecting

the substantial terms, the case is not one for specific performance. *Id.* It is not a function of a court of equity to make a contract for the parties or to supply any of the material stipulations thereof. *Id.*

In the instant case, the only evidence in the record that would support a mutual understanding between Alphons and Robert that Robert's services were not rendered gratuitously was the self-serving testimony of Robert and the testimony of his mother that Alphons told Robert that Alphons would pay Robert for his services. Even assuming that this conversation did, in fact, take place and that a contract was formed between the parties, the record contains no evidence of a mutual understanding as to the specific terms of the compensation to be paid to Robert. While Robert testified that 4 years after the alleged conversation with Alphons, Alphons told Robert that he was entitled to a certificate of deposit as compensation for services rendered, there is no evidence in the record as to which certificate of deposit or as to the amount of the particular certificate of deposit to which Robert was entitled. In short, the record is devoid of any evidence as to the material terms of the purported contract, and thus, as an appellate court, it is not our function to supply the terms for the parties and enforce the parties' alleged contract for the payment of compensation for services rendered.

Moreover, contrary to Robert's claim of a contract for compensation of services, the record reveals that Robert never reported the income he received from the certificates of deposit on his tax returns, thereby supporting an inference that the certificates of deposit did not represent compensation for services rendered. Mutual assent to an agreement is determined by the objective manifestations of intent by the parties, not by their subjective statements of intent. See *Viking Broadcasting Corp. v. Snell Publishing Co.*, 243 Neb. 92, 497 N.W.2d 383 (1993).

Therefore, we determine from our de novo review of the record that Robert's conversion of Alphons' certificates of deposit to Robert's own use was not pursuant to any enforceable oral contract, but, rather, was a substantially gratuitous transaction. Moreover, since the power of attorney did not expressly grant Robert the power to make gifts with Alphons' property, Robert has failed to meet his burden of proof with respect to the

proper disposition of Alphons' certificates of deposit and interest totaling $33,495.05. Accordingly, the district court was correct in awarding Sophia the sum of $33,495.05 with respect to the certificates of deposit. Robert's assignment of error is without merit.

## 2. Sophia's Cross-Appeal

### (a) Checking Account

In her cross-appeal, Sophia asserts that the trial court erred in not awarding a judgment against Robert for money he wrongfully converted from Alphons' checking account to his own use. Robert admits to using the power of attorney to make various purchases and disbursements with money from Alphons' checking account; however, Robert contends that these various purchases or disbursements were proper because they represented either reimbursement of expenses, compensation for services rendered, or gifts.

As we address Sophia's claims in our de novo review, we recognize that the nature of many of the checking account expenditures was in dispute, and we have considered and given weight to the fact that the trial court observed the witnesses and accepted one version of facts over another with respect to several of the transactions. See *Schram Enters. v. L & H Properties*, 254 Neb. 717, 578 N.W.2d 865 (1998). In that regard, there were numerous checks that were written by Robert on behalf of Alphons either for alleged expense reimbursements or for items that allegedly benefited Alphons during his lifetime. Without detailing each and every check, Sophia claims that several purchases were not solely for the benefit of Alphons and that certain checks were not reimbursement for legitimate expenses. The checks at issue were for the purchase of two filing cabinets to keep track of Alphons' business, the payment of real estate taxes on Alphons' farmstead and personal property tax on Alphons' pickup truck, several checks to Walgreen's to purchase personal hygiene items and medications for Alphons, the purchase of a television set for Alphons' room in the nursing home, the purchase of a vacuum for Alphons' home, the payment for repairs to Alphons' truck, the purchase of a camcorder that was eventually sold to Robert, and the payment of utilities

and homeowner's insurance on Alphons' farmstead. The evidence was in dispute in many of these transactions, and the trial court heard several witnesses, including the administrator of the Genoa Haven Home, testify regarding the issue whether Alphons was benefiting from the purchases and disbursements outlined above. Based on our de novo review of the record, we determine that the trial court did not err in concluding that Sophia was not entitled to judgment regarding the aforestated disbursements.

However, based on the principles set forth in *Fletcher v. Mathew*, 233 Neb. 853, 448 N.W.2d 576 (1989), our de novo review of the record leads us to a different conclusion regarding Sophia's claims with respect to the alleged compensation for services and gifts to Robert. With regard to those purchases constituting alleged compensation for services rendered, Robert testified that he purchased a pair of shoes for himself in the amount of $241.50. Robert also testified that he paid himself $500 for handling Alphons' funeral arrangements. Lastly, Robert testified that he paid himself $80.15 for moving Alphons' belongings to and from the various nursing homes. As previously determined, because the record is devoid of satisfactory proof that Alphons entered into a binding contract to compensate Robert for services rendered and because the power of attorney does not contain a provision authorizing Robert to compensate himself from Alphons' property, we determine that Robert has failed to meet his burden of proof with regard to the proper disposition of Alphons' money in the sum of $821.65.

As to those purchases made with Alphons' money allegedly constituting gifts, Robert wrote checks to Wal-Mart totaling $7,055.74. While Robert testified that these purchases were primarily for personal items for Alphons, Robert also testified that a portion of those purchases was for gifts for his wife and children pursuant to Alphons' oral authorization. Despite Alphons' alleged oral authorization, because the power of attorney did not grant Robert the power to make gifts with Alphons' property and the purchases were not solely for Alphons' benefit, we determine that Robert has failed to meet his burden of proof with respect to the disposition of Alphons' money in the amount of $7,055.74.

Robert also purchased a radar detector for $240.14. Robert testified that Alphons authorized Robert to purchase a radar detector so that he would not get speeding tickets while transporting Alphons to doctor's appointments. Because we do not find Robert's testimony credible in that regard, we determine that Robert has failed to meet his burden of proof with respect to the proper disposition of Alphons' money in the further sum of $240.14.

Based on the foregoing, we determine that the trial court erred in not awarding Sophia a judgment in the amount of $8,117.53 for funds wrongfully converted from Alphons' checking account to the benefit of Robert.

(b) Prejudgment Interest

Sophia asserts that the trial court wrongly applied an old version of Nebraska's prejudgment interest statute, Neb. Rev. Stat. § 45-103.02 (Reissue 1993), in denying her request for an award of prejudgment interest. Sophia claims that under the amended version, § 45-103.02 (Cum. Supp. 1996), she is entitled to prejudgment interest.

The version of § 45-103.02 that the trial court applied in the instant case provided the following:

> Except as provided in section 45-103.04, judgment interest shall also accrue on decrees and judgments for the payment of money from the date of the plaintiff's first offer of settlement which is exceeded by the judgment until the rendition of judgment if all of the following conditions are met:
>
> (1) The offer is made in writing upon the defendant . . . ;
>
> (2) The offer is made not less than ten days prior to the commencement of the trial;
>
> (3) A copy of the offer and proof of delivery to the defendant . . . is filed with the clerk of the court in which the action is pending; and
>
> (4) The offer is not accepted prior to trial or within thirty days of the date of the offer, whichever occurs first.

§ 45-103.02 (Reissue 1993). Under this version of § 45-103.02, in order to receive prejudgment interest in a cause of action accruing after January 1, 1987, a litigant *must* comply with the

four requirements of § 45-103.02. See, *Pantano v. McGowan*, 247 Neb. 894, 530 N.W.2d 912 (1995); *Label Concepts v. Westendorf Plastics*, 247 Neb. 560, 528 N.W.2d 335 (1995).

However, in 1994, the Legislature amended § 45-103.02, which now provides the following:

(1) Except as provided in section 45-103.04, interest as provided in section 45-103 shall accrue on the unpaid balance of *unliquidated claims* from the date of the plaintiff's first offer of settlement which is exceeded by the judgment until the rendition of judgment if all of the following conditions are met:

(a) The offer is made in writing upon the defendant . . . ;

(b) The offer is made not less than ten days prior to the commencement of the trial;

(c) A copy of the offer and proof of delivery to the defendant . . . is filed with the clerk of the court in which the action is pending; and

(d) The offer is not accepted prior to trial or within thirty days of the date of the offer, whichever occurs first.

(2) Except as provided in section 45-103.04, interest as provided in section 45-104 shall accrue on the unpaid balance of *liquidated claims* from the date the cause of action arose until the rendition of judgment.

(Emphasis supplied.) § 45-103.02 (Cum. Supp. 1996). Thus, under the amended version of § 45-103.02, compliance with the four conditions is no longer a prerequisite for an award of prejudgment interest if interest is provided for in Neb. Rev. Stat. § 45-104 (Reissue 1993) and the claim is liquidated. Before analyzing whether interest is available pursuant to § 45-104 and the claim is liquidated, it is necessary for us to resolve the question whether the amended prejudgment interest statute is applicable in the instant case.

Where an amendment to a statute makes a procedural change, it is binding upon a tribunal on the effective date of the amendment and is applicable to pending cases that have not been tried. *Stansbury v. HEP, Inc.*, 248 Neb. 706, 539 N.W.2d 28 (1995); *Behrens v. American Stores Packing Co.*, 236 Neb. 279, 460 N.W.2d 671 (1990). See, also, *Jackson v. Branick Indus.*, 254 Neb. 950, 581 N.W.2d 53 (1998). In the instant

case, the amendment became effective July 16, 1994, and the case was tried on November 28 and 29, 1995. Therefore, the amended § 45-103.02 was in effect at the time of the trial, and thus, the new statute will apply if the amendments to the statute were procedural in nature.

A substantive law creates duties, rights, and obligations, whereas a procedural law prescribes the means and methods through and by which substantive laws are enforced and applied. *Stansbury v. HEP, Inc., supra.* See, also, *Jackson v. Branick Indus., supra.* In the instant case, the amendments to § 45-103.02 did not create a new substantive right to prejudgment interest on liquidated and unliquidated claims, since that right was already provided for in the statute. Rather, the amendments to the statute merely altered the method for exercising the right to prejudgment interest in a cause of action where the claim is liquidated. Therefore, because we determine that the amendments to the statute were procedural in nature, the district court erred in not applying the amended version of § 45-103.02 to determine whether prejudgment interest should be awarded in the instant case. Nevertheless, it still must be resolved whether interest is provided for pursuant to § 45-104 and whether Sophia's claim is liquidated.

First, with regard to whether interest is available pursuant to § 45-104, this section states in relevant part that "[u]nless otherwise agreed, interest shall be allowed at the rate of twelve percent per annum . . . on money received to the use of another and retained without the owner's consent, express or implied, from the receipt thereof . . . ." Under this section, an agent is chargeable with interest at the legal rate from the time that the money is wrongfully withheld from the principal. See *Pearlman v. Snitzer*, 112 Neb. 135, 198 N.W. 879 (1924). In the case at bar, because Robert, in his capacity as Alphons' agent or attorney in fact, wrongfully converted to his own use and retained money belonging to Alphons without Alphons' consent, interest is allowable pursuant to § 45-104.

Second, with regard to whether Sophia's claim is liquidated, it is well settled that a claim is liquidated when there is no reasonable controversy either as to the plaintiff's right to recover or as to the amount of such recovery. See, *Blue Tee Corp. v. CDI*

*Contractors, Inc.*, 247 Neb. 397, 529 N.W.2d 16 (1995); *Lange Indus. v. Hallam Grain Co.*, 244 Neb. 465, 507 N.W.2d 465 (1993). There must be no dispute either as to the amount or as to the plaintiff's right to recover. *Id.*

Since the damages were liquidated and no reasonable controversy existed as to Robert's conversion of $33,495.05 in principal and interest from Alphons' certificates of deposit to his own use, Sophia was entitled to prejudgment interest as a matter of law on that amount from the time that Robert received the certificates of deposit. See *Fletcher v. Mathew*, 233 Neb. 853, 448 N.W.2d 576 (1989). The record reveals that the amount of prejudgment interest on the certificates of deposit, as set forth in exhibit 32, shall be calculated as $17,873.74. However, a reasonable controversy did exist regarding Robert's disbursements from Alphons' checking account. Therefore, Sophia's claim on her cross-appeal is not liquidated, and Sophia is not entitled to prejudgment interest on the $8,117.53 in disbursements from the checking account.

## V. CONCLUSION

For the foregoing reasons, the district court's judgment is modified to provide a total recovery of $59,486.32, and as modified, it is affirmed in all other respects.

AFFIRMED AS MODIFIED.

WHITE, C.J., participating on briefs.