Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/17/2016 09:07 AM CDT

L. Joe Stehlik, Personal Representative of the Estate
of Joseph M. Rakosnik, deceased, appellee, v.
Michael C. Rakosnik et al., appellants.

___ N.W.2d ___

Filed May 17, 2016.    No. A-15-318.

1. **Agency: Principal and Agent.** Nebraska law regarding power of attorney is concerned with the potential for abuse and fraud that exists when a fiduciary has broad powers to control another person's property.
2. **Principal and Agent: Fraud: Gifts: Proof.** A party establishes a prima facie case of fraud by showing that an attorney in fact used the principal's power of attorney to make a gift of the principal's assets to himself or herself or to make a gift to a third party with a close relationship to the attorney in fact.
3. **Principal and Agent: Fraud: Gifts: Proof: Intent.** Once a prima facie case of fraud is established, the burden shifts to the fiduciary to demonstrate that the gift was (1) made pursuant to power expressly granted in the power of attorney document and (2) made pursuant to the clear intent of the donor. The fiduciary also bears the burden of proving the fairness of the transaction.
4. **Principal and Agent: Gifts.** A blanket power to gift is not effective to authorize self-dealing. Where a fiduciary argues that a power of attorney allowed for self-dealing, that power must be specifically authorized in the instrument.
5. ____: ____. Where a power of attorney does not expressly permit gratuitous self-dealing transfers, a principal's oral authorization is not effective to empower the agent to utilize broad powers in the power of attorney instrument to make gifts.
6. **Trusts: Property: Title: Equity: Proof.** A party seeking to establish a constructive trust must prove by clear and convincing evidence that the individual holding the property obtained title to it by fraud, misrepresentation, or an abuse of an influential or confidential relationship and that under the circumstances, such individual should not, according to

the rules of equity and good conscience, hold and enjoy the property so obtained.

7. **Summary Judgment.** In the summary judgment context, a fact is material only if it would affect the outcome of the case.

Appeal from the District Court for Pawnee County: DANIEL E. BRYAN, JR., Judge. Affirmed.

David W. Watermeier and Andrew K. Joyce, of Morrow, Poppe, Watermeier & Lonowski, P.C., for appellants.

Jeffery W. Davis and Jeffrey A. Gaertig, of Smith, Schafer, Davis & Gaertig, L.L.C., for appellee.

INBODY, PIRTLE, and RIEDMANN, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Michael C. Rakosnik, Linda I. Rakosnik, and Susan M. Muell (collectively the Rakosniks) appeal from a summary judgment order of the district court for Pawnee County concerning transfers of real and personal property made to them by their brother, Lewis D. Rakosnik, under a power of attorney he held for their uncle, Joseph M. Rakosnik (Mike). On appeal, the Rakosniks argue that two of the transfers were valid gifts in accordance with their uncle's intentions and the power of attorney he executed. After review of the record, taking facts in the light most favorable to the Rakosniks, we disagree and affirm the judgment of the district court.

## BACKGROUND

The evidence offered and received at the summary judgment hearing reveals the following events: Lewis and the Rakosniks were the only nieces and nephews of Mike. In February 2011, Lewis moved to Mike's home at the request of Mike's long-time companion, Evelyn Doeschot (Evelyn), who lived with Mike but could no longer take care of him alone. When Lewis moved in with Mike and Evelyn, Mike was undergoing hospice care and it was uncertain how long he would live.

In March 2011, Lewis obtained a power of attorney that granted him broad powers over his uncle's property. Mike's longtime attorney, L. Joe Stehilk, prepared the power of attorney. The plenary power clause of the power of attorney document gives Lewis "all powers over my estate and affairs which I can or could exercise, including but not limited to the power to make gifts."

*Transfers of Mike's Property.*

Lewis utilized the power of attorney to make transfers of Mike's money and real property to himself and the Rakosniks. In June 2011, he cashed his uncle's Edward Jones account and transferred some of the proceeds to the Rakosniks and their spouses. In August 2011, Lewis transferred his uncle's farm property to himself and the Rakosniks, reserving a life estate for his uncle. During this time period, Lewis also utilized certain funds from his uncle's checking account for personal use.

Lewis stated that these transfers were a "protective measure" to prevent Stehlik and Evelyn from obtaining Mike's property. As the basis for these fears, Lewis cited a sale of 160 acres of Mike's land to a neighbor in January 2011. After conversations with his uncle, Lewis believed that his uncle had not planned to sell the land but had been influenced by Stehlik. He also found it to be suspicious that Stehlik charged Mike for preparation of a new abstract for the sale when Mike's original abstract was in Mike's safe deposit box. The Rakosniks also argue that the transfers were made in order to avoid probate.

Lewis stated that he learned about an Edward Jones account from a conversation with Evelyn and then utilized his power of attorney to request information about that account from Edward Jones. Lewis discussed the account with Mike and came to the understanding that the money was "to go to [Mike's] kin," that is, Lewis and the Rakosniks. In depositions, the Rakosniks testified that they never discussed their uncle's finances or estate planning with Mike before his death.

However, Linda later submitted an affidavit stating that on August 7, 2011, she sat with Mike at her parents' house and discussed transferring the farm property to her and her siblings to avoid probate.

Lewis consulted an attorney regarding how to avoid probate for his uncle's estate. The attorney prepared a warranty deed transferring the farm property to Lewis and the Rakosniks and reserving a life estate in Mike. Lewis testified in a deposition that he had conversations with Mike prior to transferring the farm property and that in particular, he discussed the deed with Mike to explain it and "make sure . . . it was okay" the day before Lewis signed it.

In August 2011, Evelyn moved out of the farmhouse where Mike lived and Lewis was staying. On January 31, 2012, Lewis was arrested. Mike died on April 27. Following a jury trial, Lewis was convicted of 39 counts of abuse of a vulnerable adult and theft by deception. The victim was Mike.

*Mike's Wills.*

Beginning in 1988, Mike executed a series of wills leaving the bulk of his estate to Lewis and the Rakosniks. Mike's 2005 will, which was in effect at the time of the transfers at issue in this case, devised Mike's real property to Lewis and the Rakosniks, subject to a life estate in the farmhouse to Evelyn, and with the condition that the land must stay in the family name and not be sold or mortgaged outside the family during the lifetime of Lewis and his siblings.

Lewis testified that he discussed the will with Mike in May 2011 and that Mike told him having the farm stay in the family name was not really important to him.

On March 1, 2012, Mike executed a new will that disinherited Lewis and the Rakosniks. Stehlik testified that on March 1, Mike called him stating that his nieces and nephews were a "bunch of crooks" who had betrayed him. Stehlik stated that this telephone call was prompted by a newspaper article Mike read about the criminal charges against Lewis. Stehlik

understood that Mike was also upset upon learning that Lewis had conveyed a remainder interest in all of Mike's farmland to himself and his siblings. Mike's March 1 will makes no mention of his farmland, unlike his previous wills. The will also makes no mention of Lewis and the Rakosniks. The March 1 will devises a rolltop desk and chair to Evelyn, makes a series of specific devises to other family members and charity, and leaves the residuary of Mike's estate to a charity. It also nominates Stehlik to serve as personal representative of the estate, just as the prior wills did.

After preparing the March 1, 2012, will, Stehlik asked Steve Kraviec, an attorney, to prepare another will for Mike. Stehlik had a poor relationship with the Rakosnik siblings and felt it would be less contentious if the will effective at Mike's death had been prepared by another attorney. Stehlik provided Kraviec with the March 1 will. On March 5, Kraviec met with Mike and prepared an additional will, which Mike signed on March 10. The only difference between the March 1 will and the March 10 will was the insertion of an alternate personal representative in the event Stehlik was unable to serve. Following a will contest, a jury determined that the March 10 will was the valid will of Mike.

In July 2013, Stehlik filed an action alleging breach of fiduciary duty, conversion, and civil conspiracy and seeking to reclaim the farm property and other funds for the estate. The parties filed cross-motions for summary judgment. After a hearing, the district court granted summary judgment in favor of the estate. The court ordered the farm property to be placed in constructive trust and, following a further hearing on damages, ordered Lewis and the Rakosniks to repay money damages to the estate. The Rakosniks appeal from those orders.

## ASSIGNMENTS OF ERROR

The Rakosniks assign on appeal, restated and reordered, that the district court erred in (1) determining that no genuine

issue of material fact exists on the issue of whether Lewis had authority to transfer the farm property, (2) determining that no genuine issue of material fact exists as to whether Lewis breached his fiduciary duty by distributing the contents of the Edward Jones account, (3) imposing a constructive trust on the farm property, (4) finding there was no evidence that Mike knew Lewis had transferred the farm property and Edward Jones account, and (5) determining that the appellants were collaterally estopped from litigating breach of fiduciary duty related to the transfers.

## STANDARD OF REVIEW

An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Grammer v. Lucking*, 292 Neb. 475, 873 N.W.2d 387 (2016). When reasonable minds can differ as to whether an inference can be drawn, summary judgment should not be granted. *Zornes v. Zornes*, 292 Neb. 271, 872 N.W.2d 571 (2015). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id.* Summary judgment proceedings do not resolve factual issues, but instead determine whether there is a material issue of fact in dispute. *Latzel v. Bartek*, 288 Neb. 1, 846 N.W.2d 153 (2014).

## ANALYSIS

*Constructive Fraud.*

As an initial matter, we note that the events in this case occurred before the effective date of the new provisions of the Nebraska Uniform Power of Attorney Act, which includes new statutory requirements for gifts made via power of attorney.

See Neb. Rev. Stat. §§ 30-4024 & 30-4040 (Cum. Supp. 2014). Undoubtedly, the standard for interpreting gifting powers in future powers of attorney will be impacted by the requirements of this act. Therefore, this case should be understood to reflect analysis under the previously existing law before the enactment of the Nebraska Uniform Power of Attorney Act.

The Rakosniks' first two assignments of error involve whether genuine issues of material fact existed that precluded the district court from finding on summary judgment that Lewis' transfer of farm property and the Edward Jones account proceeds to his siblings breached his fiduciary duties.

[1-3] Nebraska law is concerned with the potential for abuse and fraud that exists when a fiduciary has broad powers to control another person's property. See *In re Estate of Hedke*, 278 Neb. 727, 775 N.W.2d 13 (2009). Because of this concern, the Nebraska Supreme Court has held that a party establishes a prima facie case of fraud by showing that an attorney in fact used the principal's power of attorney to make a gift of the principal's assets to himself or herself or to make a gift to a third party with a close relationship to the attorney in fact. *Id.* Whether the fiduciary acted in good faith or had actual intent to defraud is immaterial; when these circumstances are shown, the law presumes constructive fraud. *Id.* Once a prima facie case of fraud is established, the burden shifts to the fiduciary to demonstrate that the gift was (1) made pursuant to power expressly granted in the power of attorney document and (2) made pursuant to the clear intent of the donor. The fiduciary also bears the burden of proving the fairness of the transaction. *Eggleston v. Kovacich*, 274 Neb. 579, 742 N.W.2d 471 (2007).

The evidence presented at the summary judgment hearing indisputably establishes that Lewis used Mike's power of attorney to make gifts to himself and his siblings, the Rakosniks. This established a prima facie case of fraud. We therefore address whether there is a genuine issue of material fact as to whether the gifts were made pursuant to power expressly

granted in the power of attorney and were made pursuant to Mike's clear intent.

*Lewis' Transfer of Farm Property.*

We first consider whether the Rakosniks have met their burden to demonstrate that Lewis' transfer of the farm property was authorized by the power of attorney and made pursuant to Mike's clear intent.

*Power Granted in Power*
*of Attorney.*

[4] The power of attorney granted Lewis "all powers over my estate and affairs which I can or could exercise, including but not limited to the power to make gifts." A blanket power to gift is not effective to authorize self-dealing. Where a fiduciary argues that a power of attorney allowed for self-dealing, that power must be specifically authorized in the instrument. *Crosby v. Luehrs*, 266 Neb. 827, 669 N.W.2d 635 (2003). A long line of Nebraska Supreme Court cases have held that "no gift may be made by an attorney in fact to himself or herself unless the power to make *such a gift* is expressly granted in the instrument and there is shown clear intent on the part of the principal to make *such a gift*." *Archbold v. Reifenrath*, 274 Neb. 894, 901, 744 N.W.2d 701, 707 (2008) (emphasis supplied). See, also, *Cheloha v. Cheloha*, 255 Neb. 32, 582 N.W.2d 291 (1998); *Mischke v. Mischke*, 247 Neb. 752, 530 N.W.2d 235 (1995).

Further, courts in other jurisdictions have held based upon the same policy concerns that the broad power to gift in a power of attorney is ineffective to empower a fiduciary to make a self-dealing gift without a specific statement that self-dealing is permissible. For example, in *Bienash v. Moller*, 721 N.W.2d 431, 436 (S.D. 2006), the South Dakota Supreme Court upheld summary judgment against fiduciaries who utilized a power of attorney that contained a power to "make gifts" to make changes to the principal's financial instruments

that benefited themselves. Citing *Crosby v. Luehrs, supra*, the South Dakota court held that the power to gift did not authorize self-dealing gifts.

Even if a transaction is not a direct gift, but indirectly promotes the fiduciary's interest, it is still considered self-dealing. See *id*. (finding funds that eventually pass through principal's estate to fiduciary constitute unauthorized self-dealing).

[5] Additionally, where a power of attorney does not expressly permit gratuitous self-dealing transfers, a principal's oral authorization is not effective to empower the agent to utilize broad powers in the power of attorney instrument to make gifts. See, *Cheloha v. Cheloha, supra* (oral authorization to make gifts to agent's wife and child were ineffective because power of attorney did not contain power to make gifts); *Fletcher v. Mathew*, 233 Neb. 853, 448 N.W.2d 576 (1989) (adopting rule that power to make any gift must be expressly granted in power of attorney instrument itself; oral authorization to gift is ineffective).

Mike's power of attorney authorized Lewis to "make gifts." However, the power of attorney did not authorize Lewis to self-deal; therefore, Lewis had no authority to effectuate a self-interested transfer of the farm property. See *Crosby v. Luehrs*, *supra*.

Although the Rakosniks attempt to distinguish Lewis' transfer of farm property to them from his transfer of farm property to himself, it is not possible to divide the transaction in this manner. Lewis transferred all of the farm property via a single warranty deed from Mike to himself and the Rakosniks as tenants in common each enjoying an undivided interest in the property, subject to a life interest in Mike. Lewis effectuated the transaction by affixing a single signature on the warranty deed. The power of attorney, therefore, either did or did not grant him the power to sign that deed and effectuate that transfer; any attempt to partition the farm property transfer into separate transfers to Lewis and to each of his siblings is an inaccurate description of the manner in which Lewis and

the Rakosniks chose to structure the transfer and would at most be legal fiction.

We find that the warranty deed, which transfers an undivided interest in the farm property to Lewis and the Rakosniks equally in a single transaction, involves gratuitous self-dealing that is not authorized by the power of attorney. See *Crosby v. Luehrs*, 266 Neb. 827, 669 N.W.2d 635 (2003) (holding that where fiduciary argues that power of attorney allowed for self-dealing, that power must be specifically authorized in instrument). Although the power of attorney contains the power to gift, the farm property transfer inextricably involves self-dealing, which must be explicitly authorized in a power of attorney. Because the power of attorney did not authorize self-dealing, Lewis did not have the power to sign the warranty deed as prepared. We agree with the trial court's determination that the transfer was void ab initio. Because the defendants cannot show that the power of attorney authorized Lewis to sign the warranty deed transferring property to himself and his siblings, we affirm the district court's grant of summary judgment regarding the farm property transfer without reaching the intent prong of the analysis.

*Transfer of Edward Jones Account.*

As to the Edward Jones account, our analysis differs. As noted above, Stehlik has established a case for constructive fraud by showing that Lewis had a power of attorney and used that power of attorney to make gifts of Mike's property to his siblings. See *In re Estate of Hedke*, 278 Neb. 727, 775 N.W.2d 13 (2009). We note that Lewis did not directly take a share of the investment account, but, rather, put "his share" into Mike's account, from which Lewis made unauthorized withdrawals for his own benefit. Because the transfers of the Edward Jones account proceeds are separable from any self-dealing gifts to Lewis himself, we find that the gifting power in the power of attorney is sufficient to authorize these gifts and we turn to the intent prong of the analysis. See *Eggleston v. Kovacich*, 274 Neb. 579, 742 N.W.2d 471 (2007).

Given the gifting power in the power of attorney, the propriety of this transfer rests upon whether evidence in the record, when viewed in the light most favorable to the Rakosniks, could support a finding that Mike clearly intended to transfer the Edward Jones account funds to Lewis' siblings before his death.

The Rakosniks argue that the gifting power in the power of attorney, Lewis' conversations with Mike, and the fact that the 2005 will left the Rakosniks the residuary of Mike's estate together create an inference that Mike authorized the transfer. We disagree.

Lewis testified in a deposition that he learned about the Edward Jones account through a conversation with Evelyn and that he then utilized his power of attorney to telephone Edward Jones and learn the specifics of the account. He discussed the account with Mike and gained the understanding that the money was "to go to [Mike's] kin." This testimony does not establish that Mike instructed Lewis to disburse the Edward Jones account immediately rather than waiting for the money to pass via the will after Mike's death.

Additionally, the fact that Lewis and the Rakosniks were the remainder beneficiaries of Mike's 2005 will does not demonstrate Mike's clear intent to give them the contents of his Edward Jones account during his lifetime. A will is evidence only of a person's plan for the disposition of his property upon his death and does not establish donative intent for an inter vivos gift.

Because there is no evidence in the record that Lewis distributed the Edward Jones account pursuant to the clear intention of Mike, the district court did not err in granting summary judgment to Stehlik on this issue.

*Constructive Trust.*

The Rakosniks next argue that the district court erred in imposing a constructive trust over the farm property because the transfer was valid and not procured by fraud.

[6] A party seeking to establish a constructive trust must prove by clear and convincing evidence that the individual holding the property obtained title to it by fraud, misrepresentation, or an abuse of an influential or confidential relationship and that under the circumstances, such individual should not, according to the rules of equity and good conscience, hold and enjoy the property so obtained. *Eggleston v. Kovacich*, 274 Neb. 579, 742 N.W.2d 471 (2007).

As discussed above, we disagree with the Rakosniks that the farm transfer was proper. The deed involved self-dealing by Lewis, and the power of attorney does not expressly allow for self-gifting. Accordingly, Lewis cannot rebut Stehlik's prima facie case of constructive fraud. See *id.* Given our above analysis and following a de novo review of the record taking all facts in the light most favorable to the Rakosniks, we hold that the district court did not err in finding that the Rakosniks' title to the farm property was procured by fraud and that they should not equitably be allowed to enjoy the property. Accordingly, this assignment of error is without merit.

*Knowledge of Transfers.*

[7] The Rakosniks next assign that the district court erred in finding that there was no evidence on the record that Mike knew of the transfers. Mike's *knowledge* of the transfers, however, would not defeat summary judgment. The question on summary judgment is whether there are genuine issues of *material* fact. *Amanda C. v. Case*, 275 Neb. 757, 749 N.W.2d 429 (2008). A fact is material only if it would affect the outcome of the case. *Id.* The relevant inquiry is not whether Mike knew of the transfers but whether Mike clearly intended for Lewis to make the transfers. *Eggleston v. Kovacich, supra*. We have determined, on de novo review, that Lewis presented no evidence that Mike clearly intended him to transfer the Edward Jones account during Mike's lifetime. And because the farmland transfer involved self-dealing which was not expressly authorized in the power of attorney, Mike's

knowledge of this transfer is also not material. Accordingly, the district court's finding of fact regarding his knowledge of the transfers is not an issue of material fact.

*Issue Preclusion.*

The Raksoniks finally assign that the district court erred in finding that they were precluded by Lewis' prior criminal convictions from litigating whether Lewis' transfers were breaches of his fiduciary duties. Given our determination above that Lewis' transfers breached his fiduciary duties, we need not reach the issue of whether the Rakosniks' arguments also fail because they are precluded by collateral estoppel. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Facilities Cost Mgmt. Group v. Otoe Cty. Sch. Dist.*, 291 Neb. 642, 868 N.W.2d 67 (2015).

## CONCLUSION

We determine that the district court did not err in determining on the merits of the issues that Stehlik was entitled to summary judgment as a matter of law. Accordingly, we affirm the judgment of the district court.

AFFIRMED.