Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/10/2025 09:09 AM CDT

Scott M. Noel, appellant, v. Pathology Medical
Services, P.C., a Nebraska professional
corporation, et al., appellees.

___ N.W.3d ___

Filed October 10, 2025.    No. S-24-679.

1. **Summary Judgment: Appeal and Error.** An appellate court reviews a district court's grant of summary judgment de novo.
2. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.
3. **Fraud: Judgments.** The existence of a fiduciary duty and the scope of that duty are questions of law for a court to decide.
4. **Evidence: Appeal and Error.** Generally, the control of discovery is a matter for judicial discretion, and decisions regarding discovery will be upheld on appeal in the absence of an abuse of discretion.
5. **Appeal and Error.** Appellate review of a district court's use of inherent power is for an abuse of discretion.
6. **Judgments: Motions for Continuance: Appeal and Error.** A court's grant or denial of a continuance and other judicial action authorized by Neb. Rev. Stat. § 25-1335 (Reissue 2016) are within the discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of discretion.
7. **Torts: Equity.** A breach of fiduciary duty is a tort claim that lies in equity.
8. **Corporations.** Judicial dissolution as a remedy for shareholder oppression is governed by the Nebraska Model Business Corporation Act.
9. **Corporations: Partnerships.** Shareholders in a close corporation owe one another the same fiduciary duty as that owed by one partner to another in a partnership.

10. **Partnerships.** Partners must exercise the utmost good faith in all their dealings with the members of the firm and must always act for the common benefit of all.

11. **Summary Judgment: Proof.** The party moving for summary judgment must make a prima facie case by producing enough evidence to show the movant would be entitled to judgment if the evidence were uncontroverted at trial. If the moving party makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law. If the burden of proof at trial would be on the nonmoving party, then the party moving for summary judgment may satisfy its prima facie burden either by citing to materials in the record that affirmatively negate an essential element of the nonmoving party's claim or by citing to materials in the record demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

12. **Rules of the Supreme Court: Pretrial Procedure.** Neb. Ct. R. Disc. § 6-326(a)(1) (rev. 2022) provides that parties may obtain discovery by required disclosures, depositions, interrogatories, requests for production, subpoenas of nonparties to produce, physical and mental examinations, and requests for admission.

13. ____: ____. The scope of discovery is limited to nonprivileged matters relevant to the subject matter involved in the pending action and reasonably calculated to lead to the discovery of admissible evidence.

14. ____: ____. Neb. Ct. R. Disc. § 6-334(c)(1)(A) (codified 2008) states that any request within the scope of Neb. Ct. R. Disc. § 6-326(b) (rev. 2022) must describe with reasonable particularity each item or category of items to be inspected.

15. ____: ____. Neb. Ct. R. Disc. § 6-337(a)(3)(B) (codified 2008) states that a party seeking discovery may move for an order compelling an answer, designation, production, or inspection. Section 6-337(a)(1) requires that a movant include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

16. **Summary Judgment: Motions for Continuance: Affidavits.** The purpose of Neb. Rev. Stat. § 25-1335 (Reissue 2016) is to provide a safeguard against an improvident or premature grant of summary judgment. An affidavit in support of relief under § 25-1335 need not contain evidence going to the merits of the case, but it must contain a reasonable excuse or good cause, explaining why a party is presently

unable to offer evidence essential to justify opposition to the motion for summary judgment. The affidavit should specifically identify the relevant information that will be obtained with additional time and indicate some basis for the conclusion that the sought information actually exists.

Appeal from the District Court for Lancaster County: Lori A. Maret, Judge. Affirmed.

Michael S. Degan and Rachel A. Geelan, of Kutak Rock, L.L.P., for appellant.

Harrison J. Kratochvil and Richard P. Jeffries, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellees.

Funke, C.J., Cassel, Stacy, Freudenberg, and Bergevin, JJ.

Freudenberg, J.

## I. INTRODUCTION

A pathologist, who was an officer, director, shareholder, and employee of a closely held professional corporation, appeals from an order of summary judgment dismissing his action against the professional corporation and its directors. The action was based on the nonrenewal of the pathologist's employment contract and the redemption of the pathologist's shares at book value. The pathologist was subject to the corporation's bylaws and an annual shareholder employment agreement. The bylaws required all pathologist shareholders to be professional employees of the corporation; otherwise they would lose shareholder status and be subject to redemption of their shares at book value. The shareholder employment agreement provided that "[t]his Agreement may be terminated . . . for any reason or no reason." At issue is whether there was a genuine issue of material fact preventing summary judgment on the pathologist's claims of breach of fiduciary duty and oppressive conduct. Also, at issue is whether the district court abused its discretion by denying a

motion to compel and not granting a motion to continue the corporation's motions for summary judgment to allow for discovery. We affirm.

## II. BACKGROUND

Dr. Scott M. Noel appeals from orders of summary judgment in favor of Pathology Medical Services, P.C., and its directors, Dr. Ryan DeHaan, Dr. Darrell Lester, Dr. Charles Reese, and Dr. Brian Toalson (collectively Pathology Medical), which ultimately dismissed Noel's complaint with prejudice. Noel is a board-certified pathologist. Pathology Medical is a closely held professional corporation incorporated in Nebraska. Pathology Medical was incorporated in 1973 and is composed of pathologist shareholders.

Noel joined Pathology Medical in 1994 and became one of the pathologist shareholders in 1996 by making a $65,365 capital contribution. For many years after that, Noel held a minority share of Pathology Medical and served in multiple roles in the company, including medical director, compliance officer, and corporate secretary. Noel, like the other pathologist shareholders, was subject to annual shareholder employment agreements. At the end of 2021, Noel's employment agreement with Pathology Medical expired without renewal. The directors were pathologist shareholders of Pathology Medical, members of Pathology Medical's board of directors, and colleagues of Noel during all relevant times.

### 1. Pathology Medical's Bylaws and Agreements

Under section 2.01 of Pathology Medical's bylaws, pathologist shareholders are required to be employed by Pathology Medical to remain a shareholder:

> Qualifications. Only those persons who are duly licensed and otherwise legally qualified pursuant to the laws of the State of Nebraska to render the same professional service as that provided by the corporation's Articles

of Incorporation and who are professional employees of the corporation may be shareholders of this corporation. If, at any time, an individual shall fail to meet any of the qualifications herein set forth, then such individual shall immediately cease to be a shareholder and such individual's shares shall be redeemed as provided in Article V, Section 5.07 hereof.

Section 5.07 of the bylaws provides, in turn, for purchase—at a "[t]ermination [p]urchase [p]rice"—of a shareholder's shares in the event a shareholder ceases to be a party to an employment agreement:

Termination Purchase Price. The price to be paid for the Sellers' shares under this Section 5.07 shall be an amount equal to the Fair Market Value of such shares on the first day of the month that coincides with or next follows the date on which the Shareholder ceases to be a party to an Employment Agreement for Shareholder Employees (a "Determination Date"), as determined pursuant to Section 5.08 below (the "Termination Purchase Price").

Under section 5.08 of the bylaws, the termination purchase price is determined based on book value without any allowance for goodwill, a calculation that is also considered the fair market value of the shares:

(a) Step One: The accountant or accounting firm shall determine the book value of the Company on an accrual basis, in conformity with Generally Accepted Accounting Principles . . . , subject to the following: (i) for purposes of determining book value, the Company's assets and liabilities shall include all amounts due from or payable to all related or affiliated entities, including, without limitation, [various limited liability companies]; and (ii) there shall be no allowance of any kind for goodwill.

(b) Step Two: The Fair Market Value of the purchased shares shall then be determined by dividing

the book value of the Company as determined in Step One above by the total number of shares of stock of the Company that are issued and outstanding as of the applicable Determination Date, and then multiplying the per Share value so determined by the number of shares of stock which are being purchased. The amount so determined without any further discount for lack of control or lack of marketability shall be the "Fair Market Value" of the shares.

Once determined, a true, correct and complete copy of the accountant's valuation shall be furnished to the Seller or Sellers, the Company and each of the other Shareholders and absent manifest error, this determination shall be binding on the parties.

Pathology Medical's pathologist shareholders are also subject to written annual shareholder employment agreements. These shareholder employment agreements, including Noel's 2021 employment agreement, contained an employment termination provision that stated:

This Agreement may be terminated by either party as of the expiration of its Initial Term or as of the expiration of any Renewal Term, for any reason or no reason, provided the party desiring to terminate the Agreement shall have first notified the other party of their intention to terminate the Agreement, in writing, at least one hundred eighty (180) days prior to the date on which the termination will take effect; and provided in the case of the Employer, that said action shall have been approved by the affirmative vote of at least two-thirds (2/3) of the Employer's Board of Directors.

The governing shareholder employment agreements also contained a restrictive noncompetition provision that was effective for 2 years after termination of employment. This noncompetition provision provided, among other things, that an employee may not solicit business from any hospital,

clinic, or client that the employee had personally provided with services within the 12 months preceding termination of employment. The shareholder employment agreement contained a provision stating that "[t]his Agreement shall supersede and replace all prior understandings or agreements between the parties pertaining to the subject matter hereof." Pathologist shareholders were compensated by an annual base salary and the possibility of bonuses.

Pathology Medical's bylaws and shareholder employment agreements were last updated in December 2016, which Noel participated in and approved as a shareholder and director.

## 2. Noel's Departure From Pathology Medical

Over the course of Noel's employment with Pathology Medical, Noel was the subject of a handful of incidents, including a formal written warning issued by Reese to Noel in March 2013. This warning addressed Noel's lack of "timeliness" in handling cases and Noel's "inappropriate" communications with staff and clients. The warning informed Noel that he was being placed on an improvement plan and warned that if things did not progress in an acceptable manner, Noel would be subject to disciplinary action, "up to and including termination of [Noel's] employment." Noel was also, in his own words, "at the center of yet another pathology service controversy" stemming from a December 2020 mismanagement of a biopsy specimen. This incident, according to DeHaan, led to Noel's removal from a pathology services rotation at a hospital.

On June 3, 2021, Pathology Medical informed Noel that it intended to take action regarding his employment and offered Noel continued employment on a part-time basis, provided that Noel surrender his shares and resign from Pathology Medical. According to Pathology Medical, this decision was based on Noel's being "'difficult to work with'" and the

"'tension'" Noel had created at Pathology Medical. Noel declined this offer.

On June 24, 2021, Noel sent a text message to his colleagues stating, in part:

> I believe I fully understand the uncomfortable situation in which I have put you over the years. I'm very sorry and sincerely apologize. I think it would be best for everyone if I moved on as soon as possible by having you vote not to renew my contract for 2022.

A few days later, the Pathology Medical's board of directors voted to not renew Noel's employment agreement for 2022. On December 31, 2021, Noel's employment with Pathology Medical ended upon the expiration of his employment agreement.

As a result of the termination of Noel's employment with Pathology Medical, Noel ceased to be a shareholder pursuant to Pathology Medical's bylaws. Pathology Medical undertook to redeem Noel's shares at book value as stated in the bylaws.

Pathology Medical's chief financial officer, Lisa Wood, sought to determine the book value of Noel's shares as of December 31, 2021, according to the procedure set forth in section 5.08 of Pathology Medical's bylaws. Pathology Medical hired an accounting firm to perform a review of Pathology Medical's financial statements for 2020 and 2021. This review showed that the total yearend book value of Pathology Medical in 2021 had been reduced by $337,725 as a result of a distribution made in June 2021. The June 2021 midyear distribution was approved by Noel and the other members of Pathology Medical's board of directors, and Noel received a dividend of $56,287.50 from the distribution. Based on a review of the accounting report, Wood determined that Pathology Medical's book value as of December 31, 2021, was $280,148.

Noel held 37.442 shares of Pathology Medical at the time his employment ended. Pathology Medical's book value

per share as of December 31, 2021, was calculated at $1,247.03. Accordingly, on March 30, 2022, Wood sent to Noel a copy of her calculations and a check for $46,691.30 as payment for redemption of his shares. Noel did not deposit or cash the check and did not assign or transfer his shares back to Pathology Medical.

### 3. PROCEDURAL HISTORY

#### (a) Complaint and Answer

Noel filed this action against Pathology Medical in February 2023. Noel asserted three counts: (1) breach of fiduciary duty, (2) judicial dissolution due to oppressive conduct of Pathology Medical under Neb. Rev. Stat. § 21-2,197 (Reissue 2022) of the Nebraska Model Business Corporation Act,[1] and (3) declaratory relief as to the fair value of Noel's shares of Pathology Medical and the validity of the noncompetition provision of Noel's employment agreement.

In his complaint, Noel elaborated he made a substantial cash contribution in consideration for his shares and had substantially contributed to the growth and success of Pathology Medical's business and goodwill. He further alleged it was understood by all the pathologist shareholders that each shareholder would be allowed to continue working at Pathology Medical for as long as each desired until reaching the mandatory retirement age of 67. He alleged that being deprived of his employment at Pathology Medical effectively ended his career and caused financial harm, especially considering the noncompetition provision of the shareholder employment agreement.

Noel asserted that, under these alleged facts, the directors breached their fiduciary duties of "utmost loyalty and good faith" owed to Noel as a shareholder by (1) frustrating Noel's "reasonable expectation of continued employment" by not renewing his employment agreement, (2) "acting in

---

[1] Neb. Rev. Stat. § 21-201 to 21-2,232 (Reissue 2022).

concert to deprive [Noel] the opportunity to practice pathology in the community in which he has practiced and resided for more than 27 years," and (3) depriving him of the "full fair value" of his Pathology Medical shares.

Noel additionally asserted that the directors acted in an oppressive manner, justifying statutory dissolution by not renewing his employment and status as a shareholder and by depriving him "of the realization of full value of his shares."

Pathology Medical answered, denying the allegations and defending against the judicial dissolution claim on the ground that Noel lacked shareholder standing.

### (b) First Motion for Summary Judgment

One month after answering, Pathology Medical filed its first motion for summary judgment on each claim (First Motion for Summary Judgment). Specifically, Pathology Medical argued that Noel could not show wrongdoing on the part of Pathology Medical, as is necessary to sustain a breach of fiduciary duty claim; that Noel did not have shareholder standing to bring a suit to dissolve Pathology Medical; and Noel's declaratory relief could not be granted because of the plain language of the shareholder employment agreement and Pathology Medical's bylaws.

### (c) First Discovery Requests, Motion for
### Protective Order, and Motion to Compel

Noel thereafter served Pathology Medical with written discovery requests to be due the day before the hearing on the First Motion for Summary Judgment. As reflected in Pathology Medical's responses, in which it objected to the requests, Noel made 16 requests that can be generally summarized as seeking from Pathology Medical his personnel file, all documents relating to the decision to not renew his employment agreement, all stock ledgers and capital account documents since 2016, all corporate minutes since 2016, and all documents mentioning Noel since 2016.

Pathology Medical objected to the requests on the grounds that they were too broad. Pathology Medical also moved for a protective order staying discovery while their First Motion for Summary Judgment was considered. Pathology Medical stated that discovery was not necessary to determine the motion for summary judgment and would only serve to unduly increase the expense and burden of the litigation.

Noel moved to compel responses to the requests for production.

### (d) Evidence at Hearing on Motions

In June 2023, the district court heard arguments and received evidence on Pathology Medical's First Motion for Summary Judgment, Pathology Medical's motion for protective order staying discovery, Noel's motion to compel responses to his requests for production, and Noel's motion to continue. Among the evidence received at the hearing was a copy of Pathology Medical's bylaws as amended in December 2016, Noel's 2021 shareholder employment agreement, Noel's June 2021 text message to the other Pathology Medical shareholders, and records relating to Noel's job performance. Under the parties' statements of undisputed facts in relation to the First Motion for Summary Judgment, Noel's participation in the execution of the bylaws and employment agreement was undisputed, as was the language of those documents. No evidence was proffered showing that Pathology Medical had enforced the noncompetition provision.

### (e) First Summary Judgment Order

The district court granted Pathology Medical's First Motion for Summary Judgment in part and denied it in part (First Summary Judgment Order).

The district court granted Pathology Medical's motion in part, finding no genuine issue of material fact as to Noel's claims for (1) a declaratory judgment that the noncompetition provision was invalid and unenforceable, (2) breach

of fiduciary duty by terminating his employment, and (3) judicial dissolution due to shareholder oppression by Pathology Medical's terminating Noel's employment.

The district court found that the noncompetition provision "only prevent[s]" Noel "from engaging in unfair competition with [Pathology Medical] and [is] no greater than reasonably necessary to protect [Pathology Medical's] legitimate interest." Regarding the claim that Pathology Medical breached fiduciary duties by terminating Noel's employment, the district court relied on other jurisdictions to conclude that "the no-cause termination language in the Employment Agreement negates any reasonable expectation of continued employment as a matter of law."

The district court denied the motion for summary judgment as to the claims of (1) judicial dissolution due to shareholder oppression by Pathology Medical's depriving Noel of the full value of his shares; (2) declaratory judgment determining the fair value of Noel's shares; and (3) breach of fiduciary duty by Pathology Medical's redeeming Noel's shares at book value, rather than market value.

The district court ruled that further discovery would be allowed on the issues of value and redemption of Noel's shares as they related to Noel's remaining claims. It stated, "The Court is of the opinion that further discovery should be allowed regarding the valuation and redemption of the shares."

The court denied Noel's motion to compel on the grounds that most of Noel's requests for production related to Noel's performance and termination of employment, which were no longer at issue. However, it stated, "[D]iscovery is allowed to continue on other issues pending in this case."

The court denied as moot Noel's motion to continue and the motion by Pathology Medical for a protective order.

(f) Discovery Regarding Value and Redemption

Two months after the First Summary Judgment Order, Pathology Medical, through counsel, sent a letter to Noel

that was accompanied by documents relating to the valuation and redemption of Noel's shares. These appear to have corresponded, in part, to request No. 15 of Noel's first discovery requests. Noel did not respond to this letter and did not serve any further discovery requests.

### (g) Second Motion for Summary Judgment

Approximately 3 months later, Pathology Medical filed its second motion for summary judgment on Noel's remaining claims (Second Motion for Summary Judgment). Pathology Medical argued that Noel had not provided any plausible allegations to support the claim that Noel was deprived of the full book value of his Pathology Medical shares and that contract law principles made it clear that Noel had received what he bargained for.

### (h) Second Motions to Continue and to Compel

Noel moved to continue the hearing on Pathology Medical's Second Motion for Summary Judgment under § 25-1335, generally asserting that discovery had not been completed and that he required more time.

In support of the motion to continue, Noel attached an affidavit of his counsel, which generally set forth the procedural history of the parties' motions and the court's rulings. Counsel also observed in the affidavit that the materials provided by Pathology Medical since the court's First Summary Judgment Order produced only 11 pages of documentation that were not already in his possession. Other than the general reference to the original 16 requests, Noel did not specifically identify what additional relevant information he sought to obtain if given additional time.

Simultaneously with his second motion to continue, Noel filed a second motion to compel. However, the second motion to compel referred only to the original 16 requests for production and alleged that none had been satisfied.

Attached to the second motion to compel was a letter from Pathology Medical's counsel explaining that, in the absence of any specific requests from Noel and in an attempt to honor the court's order stating Noel could take discovery regarding the valuation and redemption of his shares, Pathology Medical would provide copies of the minutes in which Noel ratified the book value formula, the audited 2021 financial statement, Pathology Medical's stock ownership tables, an accounting memorandum, and a payment stub. Counsel for Pathology Medical stated it would review any requests by Noel for any other discrete information Noel believed to be relevant to the valuation of Noel's shares. It does not appear from the record that Noel made any such requests.

At the hearing on the Second Motion for Summary Judgment, the court stated that Noel had failed to comply with the local rule requiring opposing counsel to meet and confer on discovery matters before bringing a motion to compel. In its order, the court overruled Noel's motions to continue and to compel, noting its earlier ruling on the first motion to compel for the same discovery requests.

(i) Evidence at Summary Judgment Hearing

In May 2024, the district court heard arguments and received evidence on Pathology Medical's Second Motion for Summary Judgment, Noel's motion to compel, and Noel's motion to continue. At the outset, the court reiterated that Noel's counsel had failed to comply with Rules of Dist. Ct. of Third Jud. Dist. 3-5 (rev. 1995) (local rule 3-5) by not conferring with opposing counsel on Noel's discovery motions. Noel's counsel admitted, "I have not discussed [the motion to compel or motion to continue] with opposing counsel . . . ."

During the hearing, the court received evidence, including an affidavit of Wood that included attachments pertaining to the value and redemption of Noel's shares, an affidavit of Pathology Medical's counsel that included as an attachment the letter sent to Noel's counsel regarding

value and redemption of Noel's shares, an affidavit of DeHaan that included as an attachment the meeting minutes from three of Pathology Medical's board of directors meetings, and an affidavit of Noel's counsel that again included as an attachment Pathology Medical's responses to Noel's requests for production.

Under the parties' statements of undisputed facts in relation to the Second Motion for Summary Judgment, it was undisputed that Noel was subject to Pathology Medical's bylaws, including the provisions relating to redemption of shares. It was also undisputed that Pathology Medical tendered a check to Noel for the book value of Noel's shares, based on when his employment with Pathology Medical ended. Noel disputed that the book value was the appropriate valuation for his shares.

In his index of evidence in support of his opposition to the Second Motion for Summary Judgment, Noel cited filings already submitted, namely, his counsel's affidavit, Pathology Medical's responses to Noel's first requests for production of documents, and the letter from Pathology Medical's counsel regarding discovery. Noel did not submit any evidence to dispute Pathology Medical's valuation of his shares. Noel's only argument at the hearing was that discovery should be allowed to take place and that summary judgment was therefore improper.

### (j) Final Judgment

The district court issued its final judgment in which it overruled Noel's second motion to compel, granted Pathology Medical's Second Motion for Summary Judgment, and dismissed Noel's complaint with prejudice. It specifically denied all other relief requested but not specifically granted in the order.

As explained by the district court, Noel based all his claims on the allegations that

(1) his employment with [Pathology Medical] was wrongfully terminated while he had a reasonable expectation of continued employment at [Pathology Medical]; (2) after his termination and in the process of redeeming his shares, [Pathology Medical is] seeking to deprive him of the full fair value of his shares; and (3) [Pathology Medical] ha[s] deprived him of the opportunity to practice pathology in the community by operation of the competition restrictions.

It found no genuine issue of material fact as to any of the issues presented.

Specifically, the court reiterated its prior conclusion that the noncompetition provision was valid and enforceable. It found no genuine issue that Noel lacked a reasonable expectation of continued employment in light of the provision of the employment agreement that his employment could be terminated for any reason or no reason. It also found that Pathology Medical had provided sufficient evidence to make a prima facie case of the correctness of the valuation of the purchase price of the shares pursuant to the bylaws, shifting the burden to Noel to raise a genuine issue of fact otherwise, which he did not do.

As for the motion to compel, the district court noted Noel had not served Pathology Medical with any discovery requests following the court's First Summary Judgment Order and had not offered any evidence disputing Pathology Medical's valuation and redemption of Noel's shares. Instead, Pathology Medical had voluntarily given Noel additional documentation in its possession relating to the value of the shares.

Noel timely filed this appeal.

## III. ASSIGNMENTS OF ERROR

Noel assigns, condensed and restated, that the district court erred by (1) granting summary judgment in favor of Pathology Medical by determining that Pathology Medical did not breach any fiduciary duty or engage in any minority shareholder oppression by terminating

Noel's employment, seeking to redeem Noel's shares at book value, and enforcing the noncompetition provision of Noel's employment agreement; (2) abusing its discretion in denying Noel's motion to compel discovery; and (3) abusing its discretion in denying Noel's motion to continue summary judgment pursuant to § 25-1335.

## IV. STANDARD OF REVIEW

[1,2] An appellate court reviews a district court's grant of summary judgment de novo.[2] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.[3]

[3] The existence of a fiduciary duty and the scope of that duty are questions of law for a court to decide.[4]

[4] Generally, the control of discovery is a matter for judicial discretion, and decisions regarding discovery will be upheld on appeal in the absence of an abuse of discretion.[5]

[5] Appellate review of a district court's use of inherent power is for an abuse of discretion.[6]

[6] A court's grant or denial of a continuance and other judicial action authorized by § 25-1335 are within the discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of discretion.[7]

## V. ANALYSIS

[7,8] Noel does not dispute the validity of the noncompetition provision in the employment agreement or that, under

[2] *Syring v. Archdiocese of Omaha*, 317 Neb. 195, 9 N.W.3d 445 (2024).

[3] *Clark v. Scheels All Sports*, 314 Neb. 49, 989 N.W.2d 39 (2023).

[4] *Strohmyer v. Papillion Family Medicine*, 296 Neb. 884, 896 N.W.2d 612 (2017).

[5] *Lombardo v. Sedlacek*, 299 Neb. 400, 908 N.W.2d 630 (2018).

[6] *Id.*

[7] *Id.*

the plain language of the underlying bylaws and employment agreement, the directors were entitled to terminate Noel's employment and purchase his shares at book value—which he does not dispute was accurately calculated. Instead, Noel argues there were genuine and material issues as to whether it was "reasonable" for the directors to carry out the terms of the bylaws and the employment agreement, preventing summary judgment on his claims of breach of fiduciary duty and for judicial dissolution. A breach of fiduciary duty is a tort claim that lies in equity.[8] Judicial dissolution as a remedy for shareholder oppression is governed by the Nebraska Model Business Corporation Act.[9] Noel's breach of fiduciary duty and judicial dissolution claims both center around Pathology Medical's termination of Noel's employment and attempt to repurchase his shares at book value. They also both involve the overlapping legal concept of reasonable expectations.

[9,10] We have said that shareholders in a close corporation owe one another the same fiduciary duty as that owed by one partner to another in a partnership.[10] Partners must exercise the utmost good faith in all their dealings with the members of the firm and must always act for the common benefit of all.[11] We have not elaborated on this abstract

---

[8] See, *Anderson v. Bellino*, 265 Neb. 577, 658 N.W.2d 645 (2003); *Getzschman v. Miller Chemical Co.*, 232 Neb. 885, 443 N.W.2d 260 (1989).

[9] See § 21-2,197.

[10] *Bellino v. McGrath North*, 274 Neb. 130, 738 N.W.2d 434 (2007). See *Anderson v. Bellino, supra* note 8. See, also, *Anderson v. Clemens Mobile Homes*, 214 Neb. 283, 333 N.W.2d 900 (1983).

[11] *Strohmyer v. Papillion Family Medicine, supra* note 4; *Bellino v. McGrath North, supra* note 10; *Bode v. Prettyman*, 149 Neb. 179, 30 N.W.2d 627 (1948), *supplemented by* 149 Neb. 469, 31 N.W.2d 429. But see Neb. Rev. Stat. § 67-424 (Reissue 2018) (the only fiduciary duties between partners are duties of loyalty and due care as described by statute).

standard but have applied it to a former shareholder employee competing with his former employer,[12] usurpation of a corporate opportunity,[13] failure to monitor corporate affairs,[14] and a personal representative's improper payment out of an estate.[15] We have not considered whether shareholders can breach their fiduciary duties to each other by terminating or not renewing the employment of a shareholder employee under an at-will provision of an employment agreement and then attempting to redeem shares at book value pursuant to corporate bylaws ratified by that shareholder employee.

It has generally been explained that the "'common benefit of all'" is not an obligation that each corporate decision benefit each shareholder as an individual, but, rather, that corporate business transactions be for the common benefit of the corporation (and by extension of its shareholders), as opposed to for personal gain.[16] At least one court has defined "good faith" in the context of fiduciary duties between shareholders of closely held corporations as the lack of bad faith, which "embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud [or] actual intent to mislead or deceive another."[17]

---

[12] See *Dick v. Koski Prof. Group*, 307 Neb. 599, 950 N.W.2d 321 (2020), *modified on denial of rehearing* 308 Neb. 257, 953 N.W.2d 257 (2021).

[13] See *Anderson v. Bellino, supra* note 8.

[14] See *Trieweiler v. Sears*, 268 Neb. 952, 689 N.W.2d 807 (2004).

[15] See *In re Estate of Lakin*, 310 Neb. 271, 965 N.W.2d 365 (2021), *modified on denial of rehearing* 310 Neb. 389, 966 N.W.2d 208.

[16] See *Henley v. Haynes*, 376 So. 2d 1030, 1031 (La. App. 1979). Accord, *DeSantis v. Dixon*, 72 Ariz. 345, 236 P.2d 38 (1951); *Tinter v. Lucik*, 172 Ohio App. 3d 692, 876 N.E.2d 1026 (2007); *Bossier v. Lovell*, 410 So. 2d 821 (La. App. 1982). See, also, *Koehler v. Black River Falls Iron Company*, 67 U.S. (2 Black) 715, 17 L. Ed. 339 (1862).

[17] *Vontz v. Miller*, 2016 Ohio 8477, ¶ 33, 111 N.E.3d 452, 461 (Ohio App. 2016) (internal quotation marks omitted).

While some courts imposing partnership fiduciary duties on shareholders in a closely held corporation use other tests, such as the "'business purpose test,'"[18] to determine claims for breach of fiduciary duty amongst shareholders of closely held corporations, there is a strong trend in favor of a reasonable expectation test for such claims, either as a replacement of prior standards or as a way of interpreting preexisting ones.[19]

The parties and the court below utilized the "reasonable expectation test" to evaluate whether there was a genuine issue that the directors, by terminating Noel's employment and calculating the repurchase price of his shares at book value, acted in good faith and for the common benefit of all. We, therefore, then assume without deciding that the reasonable expectation test is an appropriate lens through which to evaluate if there was a genuine issue of material fact preventing summary judgment on Noel's claim that the directors breached their fiduciary duties.

Based upon that assumption, it seems appropriate to employ a reasonable expectation test to the question of whether there was a genuine issue of material fact preventing summary judgment on Noel's claim of shareholder oppression under § 21-2,197(a)(2)(i)(B) of the Nebraska Model Business Corporation Act.

Section 21-2,197(a)(2)(i)(B) provides that a court may judicially dissolve a corporation if the shareholder establishes "[t]he directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, oppressive, or fraudulent." Noel correctly points out that the

---

[18] 168 Am. Jur. Trials 323, § 13 at 346 (2021).

[19] See 2 F. Hodge O'Neal et al., O'Neal and Thompson's Close Corporations and LLCs: Law and Practice § 9:8 (rev. 3d ed. 2015). See, also, e.g., Benjamin Means, *A Voice-Based Framework for Evaluating Claims of Minority Shareholder Oppression in the Close Corporation*, 97 Geo. L.J. 1207 (2009).

Nebraska Model Business Corporation Act does not define "oppression." We have never expressly defined the term but have said it must be strictly construed.[20] In *Detter v. Miracle Hills Animal Hosp.*,[21] the Nebraska Court of Appeals explained that oppressive conduct must be something more than conduct that is simply unkind, greedy, and unfair. Elsewhere, it has been said that acts are not "oppressive," as set forth under the Nebraska Model Business Corporation Act, where there is a reasonable explanation for them.[22]

Secondary authorities discussing the undefined term "oppression" from the Nebraska Model Business Corporation Act observe that courts generally adopt one of three general descriptions or tests: (1) frustration of a shareholder's reasonable expectations that are both objectively reasonable and central to the decision to join the venture, (2) a visible departure from standards of fair dealing and fair play on which every shareholder is entitled to rely, and (3) something similar to breaching a fiduciary duty of good faith and fair dealing.[23] These three different tests of oppression are not contradictory.[24] But at least one court has explained that the reasonable expectations test for defining oppressive conduct is the most appropriate test to employ where, as here, a complaining shareholder was one of the original participants committing capital and resources to the venture.[25]

---

[20] See *In re Invol. Dissolution of Wiles Bros.*, 285 Neb. 920, 830 N.W.2d 474 (2013).

[21] *Detter v. Miracle Hills Animal Hosp.*, 12 Neb. App. 480, 677 N.W.2d 512 (2004), *overruled in part on other grounds* 269 Neb. 164, 691 N.W.2d 107 (2005).

[22] See *McCormick v. Dunn & Black, P.S.*, 140 Wash. App. 873, 167 P.3d 610 (2007).

[23] See, 2 O'Neal et al., *supra* note 19, § 9:7; 12B William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations § 5820.11 (2017); 19 Am. Jur. 2d *Corporations* § 2356 (2015).

[24] See 2 O'Neal et al., *supra* note 19, § 9:7.

[25] *McCormick v. Dunn & Black, P.S., supra* note 22.

Reasonable expectations have been described as "spoken and unspoken understandings on which the founders of a venture rely when commencing the venture."[26] Stated another way, reasonable expectations are those "of which *all investors* shared a basic understanding at the inception of the venture and that, objectively viewed, w[ere] reasonable under the circumstances."[27] Such expectations must be balanced against the need for flexibility to run a business in a productive manner.[28] Frustration of subjective hopes and desires will not alone trigger relief.[29]

Inside a closely held corporation, reasonable expectations must be gleaned from the parties' actions, as well as their signed agreements.[30] Factors considered in an analysis of whether a plaintiff shareholder's expectation was reasonable include whether the expectation

> (i) contradicts any term of the operating agreement or any reasonable implication of any term of that agreement; (ii) was central to the plaintiff's decision to become a member of the limited liability company or for a substantial time has been centrally important in the member's continuing membership; (iii) was known to other members, who expressly or impliedly acquiesced in it; (iv) is consistent with the reasonable expectations of all the members, including expectations pertaining to the plaintiff's conduct; and (v) is otherwise reasonable under the circumstances.[31]

---

[26] *Noble v. Lubrin*, 114 Wash. App. 812, 822, 60 P.3d 1224, 1230 (2003) (internal quotation marks omitted).

[27] *Kortum v. Johnson*, 755 N.W.2d 432, 446 (N.D. 2008) (emphasis in original).

[28] See *id.*

[29] 2 O'Neal et al., *supra* note 19.

[30] See *Harris v. Testar, Inc.*, 243 N.C. App. 33, 777 S.E.2d 776 (2015).

[31] *Manere v. Collins*, 200 Conn. App. 356, 385, 241 A.3d 133, 154 (2020) (internal quotation marks omitted).

Not all of a shareholder's "business bargain" will necessarily be contained in the charter, bylaws, or separate signed agreements,[32] but, depending on the circumstances, a writing can affirmatively "delimit what participants' reasonable expectations are."[33] "[T]hese reasonable expectations constitute the bargain of the parties in light of which subsequent conduct must be appraised."[34]

An expectation of continuing employment is reasonable if continuing employment can be fairly characterized as part of the shareholder's investment[35] and if that expectation is known and accepted by other shareholders and properly balanced against the majority or controlling shareholders' need for flexibility in running the business.[36] Shareholder employees challenging terminations of employment are often unable to overcome the obstacle of employment at will,[37] much less the obstacle of having signed an employment agreement expressly providing that employment can be terminated at any time for any reason.

At-will employment or shareholder agreements requiring minority shareholders to sell back their shares at a set price upon termination of employment that can be for any reason or no reason strongly weigh against a reasonable expectation of continued employment.[38] And the minority's shareholder

---

[32] 2 O'Neal et al., *supra* note 19, § 9:8 at 283.

[33] *Id*. at 284.

[34] *Id.* (internal quotation marks omitted).

[35] See *Haley v. Forcelle*, 669 N.W.2d 48 (Minn. App. 2003).

[36] See *id*.

[37] See Douglas K. Moll, *Shareholder Oppression v. Employment at Will in the Close Corporation: The Investment Model Solution*, 1999 U. Ill. L. Rev. 517 (1999).

[38] See Matthew C. McDermott & Christopher J. Jessen, *At-Will or Something More?: Reasonable Expectations of Continued Employment by Minority Shareholders Post-Baur v. Baur Farms, Inc.*, 67 Drake L. Rev. 713 (2019) (and cases cited therein).

interest is not injured if the corporation redeems shares at a fair price *or a price determined by prior contract* or the shareholder is otherwise able to obtain a fair price.[39]

Accordingly, in *Siegel v. Goldstein*,[40] where the validity of a controlling agreement was no longer disputed, a court granted summary judgment in favor of the majority shareholders of a dental practice and against the minority dentist shareholder in his action for shareholder oppression by canceling his shares of the corporation when his license became inactive, which was in conformity with the plain language of the agreement. Likewise, in *Mueller v. Cedar Shore Resort, Inc.*,[41] where a plaintiff shareholder was lawfully removed in compliance with the procedures set out in a company's bylaws, evidence presented by the plaintiff that he was under the impression secret meetings were conducted to remove him was insufficient to create a genuine issue of material fact.

In *McLaughlin v. Schenck*,[42] a court affirmed summary judgment against a minority shareholder in a closely held corporation in his action for breach of fiduciary duty for terminating his employment when his employment agreement expressly stated his employment could be terminated at any time for any reason, so long as 6-months' notice was given. Lastly, in *Metro Mgmt Svcs v. Van Istendal*,[43] a court affirmed summary judgment in a shareholder oppression claim based on termination of employment when the plaintiff signed an employment agreement acknowledging her employment was at will. The court distinguished the defendant shareholder's

---

[39] *Hollis v. Hill*, 232 F.3d 460 (5th Cir. 2000).

[40] *Siegel v. Goldstein*, 657 F. Supp. 3d 646 (E.D. Pa. 2023).

[41] *Mueller v. Cedar Shore Resort, Inc.*, 643 N.W.2d 56 (S.D. 2002).

[42] *McLaughlin v. Schenck*, 220 P.3d 146 (Utah 2009), *abrogated on other grounds, Haik v. Jones*, 427 P.3d 1155 (Utah 2018).

[43] *Metro Mgmt Svcs v. Van Istendal*, 457 N.J. Super. 66, 197 A.3d 695 (2018).

case from cases where there was no specific employment agreement entered into by the shareholder.[44]

As one commentator has explained, while, standing alone, buy-sell agreements might not be intended to memorialize the parties' understandings of the terms of employment, it "makes sense" to find that "a shareholder who signs an employment agreement providing for termination without cause does not have a reasonable expectation of continued employment" because "[t]he purpose of employment agreements is to memorialize the parties' understandings concerning the terms of employment, and provisions in employment agreements providing that termination may be without cause are generally straightforward."[45]

[11] Under our case law, the party moving for summary judgment must make a prima facie case by producing enough evidence to show the movant would be entitled to judgment if the evidence were uncontroverted at trial.[46] If the moving party makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law.[47] If the burden of proof at trial would be on the nonmoving party, then the party moving for summary judgment may satisfy its prima facie burden either by citing to materials in the record that affirmatively negate an essential element of the nonmoving party's claim or by citing to materials in the record demonstrating that the nonmoving party's evidence is

---

[44] See *id.*

[45] Samuel E. Neschis, *Reasonable Expectations of Shareholder-Employees in Closely Held Corporations: Towards a Standard of When Termination of Employment Constitutes Shareholder Oppression*, 13 DePaul Bus. & Com. L.J. 301, 314-15 (2015).

[46] *Clark v. Scheels All Sports, supra* note 3.

[47] *Id.*

insufficient to establish an essential element of the nonmoving party's claim.[48]

The evidence at the summary judgment hearings demonstrated that Noel's employment agreement provided his employment could be terminated by either party at the expiration of any renewal term, "for any reason or no reason." Noel not only signed this employment agreement but voted to approve revisions to the shareholder employee agreements in 2016. Pathology Medical's bylaws also contemplated termination of employment, providing that an individual must be a professional employee to be a shareholder and that an individual ceases to be a shareholder when the individual is no longer an employee of Pathology Medical. The bylaws provide a detailed process for the repurchase of stock at a set book value in the event of "Termination of Employment Agreement." It was undisputed that Noel voted for the revisions to the Pathology Medical bylaws in 2016. It was undisputed that Pathology Medical followed the terms of the employment agreement in voting to not renew Noel's employment and giving him ample notice and that it offered to repurchase Noel's shares at a book value accurately calculated in accordance with the bylaws.

Also relevant is the undisputed evidence introduced at the summary judgment hearings showing a history of incidents involving Noel. Noel himself suggested by text message that it would be best for Pathology Medical if the directors voted to not renew his employment contract for 2022.

As the moving party, Pathology Medical satisfied its prima facie burden to show there was no genuine issue of any material fact, more specifically, that there was no genuine issue that Pathology Medical's actions were contrary to Noel's reasonable expectation. The burden shifted to Noel to produce evidence showing the existence of a material issue of fact. Noel asserts that he had an understanding and an expectation

---

[48] *Id.*

of continued employment up until the mandatory age of retirement, but he did not offer any evidence in support of this understanding. Noel asserts that book value was not the appropriate valuation of his shares but did not offer any evidence of a more appropriate valuation and does not dispute the calculation of the book value of his shares.

The undisputed evidence in this case shows that Noel did not have a reasonable expectation of continued employment and that the directors did not breach any fiduciary duties owed to Noel or engage in oppressive conduct by voting to not renew his employment agreement for 2022 and seeking to redeem his shares at book value. The district court did not err in granting summary judgment in favor of Pathology Medical.

We find no merit to Noel's contention that he was prevented from presenting a genuine issue of material fact because the court did not grant his second motion to compel discovery and second motion to continue to conduct such discovery.

A court's decision to grant or deny a motion to compel, as with other discovery matters, is discretionary and will not be overturned absent an abuse of discretion.[49] Likewise, the trial court's decision to grant or deny a continuance under § 25-1335 will not be disturbed on appeal in the absence of an abuse of discretion.[50]

[12-15] Neb. Ct. R. Disc. § 6-326(a)(1) (rev. 2022) provides that parties may obtain discovery by required disclosures, depositions, interrogatories, requests for production, subpoenas of nonparties to produce, physical and mental examinations, and requests for admission. The scope of discovery is limited to nonprivileged matters relevant to the subject matter involved in the pending action and reasonably calculated to lead to the discovery of admissible evidence.[51]

---

[49] See *Eddy v. Builders Supply Co.*, 304 Neb. 804, 937 N.W.2d 198 (2020).

[50] See *id.*

[51] See § 6-326(b)(1). See, also, *Norquay v. Union Pacific Railroad*, 225 Neb. 527, 407 N.W.2d 146 (1987).

Neb. Ct. R. Disc. § 6-334(c)(1)(A) (codified 2008) states that any request within the scope of § 6-326(b) must describe with reasonable particularity each item or category of items to be inspected. Neb. Ct. R. Disc. § 6-337(a)(3)(B) (codified 2008) states that a party seeking discovery may move for an order compelling an answer, designation, production, or inspection. Section 6-337(a)(1) requires that a movant include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action. Similarly, district court local rule 3-5 provides that "the court shall refuse to consider any and all motions relating to discovery, unless moving counsel, as part of the motion, makes a written showing that after personal consultation with counsel for opposing party(ies) and reasonable efforts to resolve differences, counsel are unable to reach an accord." While we have not explicitly ruled on the effect of failure to meet and confer, the South Dakota Supreme Court has said that "[a] failure to fulfill the meet and confer requirement in good faith often serves as a basis for denying the motion to compel."[52]

The district court denied Noel's first motion to compel Pathology Medical's discovery responses on the grounds that the requests largely related to Noel's expectation of continued employment, which the court disposed of in its First Summary Judgment Order. Noel's second motion to compel included as an attachment Pathology Medical's responses to his original 16 requests for production of documents and asserted that Pathology Medical had yet to satisfy any of them. The record reflects no discovery requests following the First Summary Judgment Order. The record shows no notices of depositions, including for Pathology Medical's directors. The record also reflects, as admitted by Noel's

---

[52] *Krueger v. Grinnell Mutual Reinsurance Co.*, 921 N.W.2d 689, 695 (S.D. 2018).

counsel at the hearing on the Second Motion for Summary Judgment, that Noel's counsel did not meet and confer with opposing counsel on any of the discovery motions. The second motion to compel was denied in the district court's final order for "the same reasons" as the first motion to compel. Based on the record before us, we cannot say that the district court abused its discretion in denying Noel's motions to compel.

The second motion to continue, pursuant to § 25-1335, stated that Noel needed time to conduct discovery in order to respond to the Second Motion for Summary Judgment. In support of Noel's second motion to continue, Noel's counsel attached an affidavit that mainly recited the procedural history of the case, adding that Pathology Medical had not responded to Noel's requests for production, even though the district court had denied Noel's motion to compel in the court's First Summary Judgment Order. The affidavit alleged that Pathology Medical had the documents and information to support Noel's opposition and that no depositions had yet taken place, adding "[Noel] requires testimony from [Pathology Medical's] managers and members to support his breach of fiduciary duty claim."

Noel's affidavit failed to specifically identify the relevant material sought, as required by our case law.[53] Section 25-1335 states:

Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

[16] The purpose of § 25-1335 is to provide a safeguard against an improvident or premature grant of summary

---

[53] See *Lombardo v. Sedlacek, supra* note 5.

judgment.[54] An affidavit in support of relief under § 25-1335 need not contain evidence going to the merits of the case, but it must contain a reasonable excuse or good cause, explaining why a party is presently unable to offer evidence essential to justify opposition to the motion for summary judgment.[55] The affidavit should specifically identify the relevant information that will be obtained with additional time and indicate some basis for the conclusion that the sought information actually exists.[56]

The court denied the motion from the bench, noting that Noel had failed to meet and confer with opposing counsel prior to filing the motion, as required by district court local rule 3-5. Notwithstanding the failure to meet and confer on Noel's second motion to continue, we cannot say on the present record that the district court abused its discretion in denying Noel's motion to continue summary judgment.

## VI. CONCLUSION

Pathology Medical satisfied its prima facie burden by showing that Noel's evidence was insufficient to establish that there was a breach of fiduciary duty by the individual directors or that Pathology Medical should be judicially dissolved due to minority shareholder oppression. Pathology Medical would be entitled to judgment at trial if the evidence was uncontroverted. Further, the district court did not abuse its discretion by denying Noel's motion to continue or Noel's motion to compel. The judgment of the district court should be affirmed.

AFFIRMED.

MILLER-LERMAN and PAPIK, JJ., not participating.

---

[54] *Gaytan v. Wal-Mart*, 289 Neb. 49, 853 N.W.2d 181 (2014).

[55] *Lombardo v. Sedlacek, supra* note 5.

[56] *Id.*